1

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UJU ONUACHI | ] | CASE NO> ……………… |
| Plaintiff | ] | |
| | ] | |
| | ] | L DLOTY |
| VS. | ] | |
| | ] | COMPLAINT FOR: M.J. BOWMAN |
| | ] | |
| MASTER BUILDERS INC., D/B/A HARRY S. | ] | (1) FRAUD IN THE CONCEALMENT |
| PETERSON COMPANY, a corporation doing | ] | (2) DEFORMATION OF CHARACTER |
| bossiness as Harry S. Peterson Company in Ohio, | ] | (3) FRAUD IN THE CONCEALMENT |
| HARRY S. PETERSON COMPANY, an Ohio | ] | (4) FRAUD IN THE INDUCEMENT |
| Corporation, WESTERN WATERPROOFING | ] | (5) RACE/DISABILITY DISCRIMINATION |
| CO., INC. A SUBSIDIARY OF THE WESTERN | ] | |
| GROUP, a Nebraska Corporation, THE | ] | (6) INDEPENDENT ACTION |
| WESTERN GROUP, a Missouri Corporation | ] | |
| MEYLAN ENTTERPRISES INC., a Nebraska | ] | (7) INTENTIONAL INFLICTION OF |
| Corporation, THE ALLIANCE GROUP INC, a | ] | EMOTIONAL DISTRESS |
| Nebraska Corporation. | ] | |
| CASSEM, ADAMS, GOTCH, & DOUGLAS, | ] | |
| a Nebraska law firm, | ] | |
| TIMMERMIER, GROSS & PRENTISS, a Nebraska | ] | |
| law firm, | ] | |
| PICKENS, GREEN & CLEASON L.L.P. a Nebraska | ] | |
| Law firm, | ] | |
| | ] | |
| | ] | |
| Defendants | ] | DEMAND FOR JURY TRIAL |

-----------------------------------------------------------------------

Page 1 of 82

COMPLAINT

2

Plaintiff UJU ONUACHI ("Onuachi") alleges against Defendants MASTER BUILDERS INC., D/B/A HARRY S. PETERSON COMPANY ("Master Builders"), HARRY S. PETERSON COMPANY ("Peterson"), WESTERN WATERPROOFING CO., INC., a SUBSIDIARY OF THE WESTERN GROUP ("Western Waterproofing"), THE WESTERN GROUP ("Western Group"), THE ALLIANCE GROUP INC. ("Alliance"), MEYLAN ENTERPRASISE INC. ("Meylan"), CASSEM, ADAMS, GOTCH, & DOUGLAS LAW FIRM, TIMMERMIER, GROSS & PRENTISS LAW FIRM, PICKENS, GREEN & CLEASON L.L.P. LAW FIRM,

## GENERAL ALLEGATIONS

1.     At all relevant times, Plaintiff UJU ONUACHI is a citizen of Nebraska State and a resident of Lancaster County Lincoln and is currently residing at 1716 "E" Street, Apartment #4, Lincoln Nebraska 68508, with a mailing address at P.O. Box 94646 Lincoln, NE. 68509.

2.     Plaintiff is informed and believes and thereon alleges that at all relevant times Master Builders Inc. d/b/a Harry S. Peterson Company is a fictitious name used by a corporation known as SKW MBT Services Inc. in doing business in Cleveland Ohio. Defendant, Master Builders Inc. d/b/a Harry S. Peterson Company is a corporation whose last known address is 815 West Liberty Street Medina Ohio 44256.

3.     At all relevant times, Defendant Harry S. Peterson Company has been and is a corporation doing business in Cleveland Ohio, at 815 West Liberty Street Medina Ohio 44256.   .

-------------------------------------------------------------------------

Page 2 of 82

COMPLAINT

3

4.      At all relevant times, Defendant Western Waterproofing Co., Inc., A Subsidiary of the Western Group has been and is a corporation doing business in Douglas County, Nebraska at 14515 Grover Street, Omaha, Nebraska 68105.

5.      At all relevant times, Defendant The Western Group has been and is a corporation doing business in St. Louis Missouri at 1637 North Warson Road, St. Louis, Mo. 63132

6.      At all relevant times, Respondent the Alliance Group Inc. has been and is a Corporation doing business in Douglas County, Nebraska at 2566 Leavenworth Street Omaha, Nebraska 68105

7.      At all relevant times, Defendant Meylan Enterprises Inc. has been and is a Corporation doing business in Douglas County, Nebraska at 6225 S. 60th Street Omaha Nebraska 68117.

8.      At all relevant times, Respondent Dennis R. Riekenberg is an individual residing in Omaha Nebraska.

9.      At all relevant times, Respondent David A. Blagg is an individual residing in Omaha Nebraska.

10.     At all relevant times, Defendant Cassem, Tierney, Adams, Gotch & Douglas is a law firm duly organized and existing under the laws of the State of Nebraska, with its principal place of business in Omaha Nebraska located at 9290 West Dodge Road Suite 302 Omaha Nebraska

11.     At all relevant times, Respondent John R. Timmermier is an individual residing in Omaha Nebraska.

12.     At all relevant times, Defendant Timmermier, Gross & Prentiss is a law firm duly organized and existing under the laws of State of Nebraska, with its principal place of business in Omaha Nebraska located at 8712 West Dodge Road Suite 401 Omaha Nebraska 68114.

------------------------------------------------------------------------

Page 3 of 82

COMPLAINT

4

13.    At all relevant times, Respondent John K. Green is an individual residing in Omaha Nebraska

14.    At all relevant times, Defendant Pickens, Green & Cleason, L.L.P. now known as Overland Wolf is a law firm duly organized and existing under the laws of the State of Nebraska, with its principal place of business in Omaha Nebraska located at 6910 Pacific Street Omaha Nebraska 68106.

## INTRODUCTIONS

15.    These are tort actions brought by Plaintiff for declaratory judgments, injunctive and equitable reliefs, and for compensatory, special, general and punitive damages.

> Employer Dual Capacity or Dual Persona: the idea of the dual capacity doctrine is that the employer may become liable to an employee in tort if the employer occupies a position which places upon it obligations independent of, and distinct, from its role as an employer. See Duprey V. Shane, 39 Cal.2d 781. 249 P.2d 8 (1952)

16.    Uju Onuachi, employee, disputes the Nebraska Workers' Compensation Court's Award of July 13, 2001, by judge Michael P. Cavel and all other Nebraska Workers' Compensation Court award and orders following the July 13, 2001 Award

17.    Uju Onuachi, also, disputes the Nebraska Workers' Compensation Court's Order of January 30, 2014 by Judge Tom E. Stine entered in Plaintiff's low back accident and injuries' Amended Petition of December 22, 1999 at Doc: 199 No. 2302 and the Petition of April 27, 2000 at Doc: 200 No. 0874.

18.    Plaintiff, further, disputes the Nebraska Workers' Compensation Court's Order of January

COMPLAINT

5

30, 2014 by Judge Tom. E. Stine entered in Plaintiff's Phrenic Nerve Palsy accident and injury Petition of March 14, 2005 found at Doc 205 No. 0482.

19.    Plaintiff furthermore, disputes the Nebraska Court of Appeals' Memorandum Opinion and Judgment on Appeal of November 26, 2014 by Honorable John F. Irwin, Honorable Everett O. Inbody and Honorable Michael W. Pirtle and all other Nebraska Court of Appeals and Nebraska Supreme Court orders entered in Onuachi's low back and Phrenic Nerve accidents and injuries.

20.    Plaintiff employee, disputes the Nebraska State Court's judgments, Memorandum Opinion and Judgment on Appeal, and Orders because of the following reasons:

    a.  the Jurisdiction of Plaintiff's low back accident and injuries was fraudulently conferred to Nebraska Workers' Compensation Court by Defendants, Cassem, Tierney, Adams, Gotch & Douglas, Timmermier, Gross & Prentiss, and Pickens, Green & Cleason, L.L.P perpetuated by Respondent Dennis R. Riekenberg, Defendant John R. Timermmier and and Defendant John K. Green "Officers of the Court."

    b.  the Nebraska State Court's orders and Judgments were obtained by successful "Frauds upon the Courts" and "Tortoise Conducts," (Frauds and Deceits) practiced by Defendants named at the caption of this Complaint in obtaining the orders and the Judgments."

21.    Additionally, Uju Onuachi, employee, brings causes of actions against his employers in the low Back injuries, Defendants, Master Builders Inc. d/b/a Harry S. Peterson Company known as SKW MBT Services Inc., Harry S. Peterson Company, and The Western Group and his employers in his Phrenic

--------------------------------------------------------------------------

Page 5 of 82

COMPLAINT

6

Nerve Palsy injury, Defendant, Meylan Enterprises Inc., Respondent The Alliance Group Inc. and all other Defendants named at the caption of this Complaint for fraud, intentional infliction of emotional distress, rescission, and declaratory relief based, upon the facts and circumstances surrounding the employers originally having liabilities imposed by the worker's compensation Act in Plaintiff's workers' compensation benefits with faults ("tortuous conducts") and ("frauds upon the Courts") therefore, should receive in return this tort actions. Defendants' violations of the workers' compensation laws are additional reasons this Court should enter award in fervor of Plaintiff and award damages, rescission, declaratory judgment, and injunctive relief as requested below.

### a. Low Back Accident and Injuries

22.   Plaintiff alleges that an actual controversy has arisen and now exists on his low back injuries between Plaintiff, Uju Onuachi and his employers, Defendants, Master Builders Inc. known as SKW MBT Services Inc., Harry S. Peterson Company and The Western Group and each of them, Plaintiff desires a judicial determination and declaration of his rights with regard to his low back injuries

23.   About July 1999, Plaintiff joined the Laborers' International Union of North America, Local 310 in Cleveland Ohio, and entered a written contractual hiring agreement with Defendant(s), Master Builders Inc. known as SKW MBT Services Inc., and/or Harry S. Peterson Company and its Parent Corporation, The Western Group.

24.   Plaintiff was hired directly by the Defendant(s) SKW MBT Services Inc. and/or Harry S.

Peterson Company and its Parent Corporation, Defendant, The Western Group as a skilled hydro demolishing union local 310 laborer to work at the Chesterfield Parking Garage Cleveland Ohio hydro-demolishing job.

25.     On or about August 8, 1999 in the scope and course of Uju Onuachi's employment with one of the Defendants or all the Defendants, Master Builders Inc. known as SKW MBT Services Inc., Harry S. Peterson Company and The Western Group at Chesterfield Parking garage Cleveland Ohio; Plaintiff injured his low back area, sustained Disc Herniations at levels L2-L3, L4-L5 and L5-S1. *See Figure 1 at page 11 of this Complaint physical appearance of Plaintiff's low back injuries as seen in CT scan of September 9, 2013.*

26.     The Defendant, Meylan Enterprises Inc. fired Uju Onuachi, a black, nonwhite, on September 20, 1999, because of Onuachi's on- the-job low back injuries and Plaintiff's employers, the Defendants, Master Builders Inc. known as SKW MBT Services Inc., Harry S. Peterson Company nor The Western Group did not provide job for the Plaintiff at the time he was released to return to work on light duty restrictions by the doctors treating Plaintiff's low back injuries. Onuachi have been without job since April 5, 2001 up to date because of his job related injuries.

27.     Plaintiff's Co-worker, Randy Codlipp, a white, nonblack had the same on-the-job low back injuries and Meylan Enterprises Inc. retained Codlipp in his job and the Defendant, Harry S. Peterson Inc. also retained Codlipp and his Job.

28.     Plaintiff therefore, seeks compensation from his employers, Master Builders Inc. known as

COMPLAINT

8

SKW MBT Services Inc., Harry S. Peterson Company and The Western Group identified herein for damages, his salary $816.00 a week for 20 years, salary increase, plus Punitive Damages for fraudulently perpetuating the exclusive remedies provided by the Act for his low back injuries caused to him.

### b. Phrenic Nerve Palsy Accident and Injuries

29.     Furthermore, Plaintiff alleges that an actual controversy has arisen and now exists on his Phrenic Nerve Palsy accident between the Plaintiff and his employer Defendant Meylan Enterprises Inc., Plaintiff desires a judicial determination and declaration of his rights with regard to his Phrenic Nerve Palsy injury

30.     That on the 30th day of March, 1999 the Plaintiff was employed by Defendant Meylan Enterprises Inc. at the time of his on-the-job Phrenic Nerve Palsy accident.

31.     The Respondent The Alliance Group Inc. is the workers' compensation carrier for Meylan Enterprises Inc. employees at the time of plaintiff's Phrenic Nerve Palsy injury. (Attached hereto and marked as Exhibit "5" is a true and correct copy of Service Agreement between Meylan Enterprises, Inc. and The Alliance Group, Inc. showing the contractual agreement between the parties containing 3 pages).

32.     On or about March 30, 1999 in the scope and course of Plaintiff's employment with Defendant Meylan Enterprises Inc. at Springfield Illinois Power Plant, as an equipment operator, Plaintiff injured his thoracic area, sustained Phrenic Nerve Palsy Injury (Paralysis of the Right Diaphragm). *See Figure 2 at page 10 of this Complaint physical appearance of Plaintiff's Phrenic Nerve Palsy injury as seen in Chest X-Rays.*

33.     Therefore, Plaintiff seeks compensation from his employer, Meylan Enterprises Inc. for

------------------------------------------------------------------------

Page 8 of 82

COMPLAINT

9

damages, for other injunctive relief, for fraudulently perpetuating the exclusive remedies provided by the

Act for Onuachi's Phrenic Nerve Palsy Injury caused to him (Concealment of this injury).



**FIGURE 1.**
**Plaintiff's Low Back Injuries as Seen in the September 9, 2013 CT Scan**

COMPLAINT

10



**FIGURE 2**
**Plaintiff's Phrenic Nerve Palsy Injury as Shown in Chest X-Ray**

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTIONS

**Facts About the Race/Disability Discrimination Complaint Filed by Plaintiff in the United States District Court for the District of Nebraska (8 Omaha).**

34.     At the time Onuachi filed the "Race/Disability Discrimination Complaint," he did not know

-------------------------------------------------------------------------
Page 10 of 82

COMPLAINT

11

much about the relationship between the Defendant Meylan Enterprises Inc. and the Respondent The Alliance Group Inc. that was why he did not include the Respondent the Alliance Group Inc. as party Defendant in the "Discrimination Race/Disability Complaint."

35.     Plaintiff's employers Defendant Master Builders Inc. d/b/a Harry S. Peterson Company and Defendant Harry S. Peterson Company and its Parent Corporation Western Group refused to pay indemnity compensation while Onuachi was being treated for his low back injuries.

36.     On or about  September 7, 1999 the doctor treating Plaintiff's low back injuries released him to return to light duty work.

37.     Defendant Meylan Enterprises Inc. and Respondent The Alliance Group Inc. did not provide job for Onuachi. On September 20, 1999 the Defendant, Meylan Enterprises Inc. fired Plaintiff stating; "There is no work that would qualify as light duty at Meylan Enterprises. No employee may work at Meylan until he/she has been released by a physician and has a written statement authorizing them to work with No restrictions."

38.     Randy Cudlipp, Onuachi's co-worker, a white nonblack had a low back on-the-job injuries and Meylan Enterprises Inc. retained Cudlipp's job. While Uju Onuachi, a black nonwhite had a low back on-the-job injuries and Meylan Enterprises Inc. fired Onuachi from his job because of his race (black) and his disability (low back on-the-job injuries).

39.      Plaintiff's employers at the time of his low back accident and injuries, Defendants Master Builders Inc. d/b/a Harry S. Peterson Company known as SKW MBT Services Inc. and Harry S. Peterson Company and its Parent Corporation, the Defendant Western Group refused to pay indemnity

COMPLAINT

compensations as Onuachi was being treatmed for his low back injuries and also, did not proviod job for Onuachi because of his on-the-job low back injuries while Randy Codlipp a white nonblack with a low back injury was retained by Defendants, Master Builders Inc. d/b/a Harry S. Peterson Company known as SKW MBT Services Inc. and Harry S. Peterson Company and its Parent Corporation, the Defendant The Western Group.

40.    The Nurosurgeon treating Onuachi's on-the-job-low back injuries, Dr. Charle Taylon of Creighton University School of Medicine, after sending Plaintiff for about two monthes physical teropy and Steriod injection treatment for his low back injuries released Plaintiff to returne to work on light duty 15lbs lifting restrictions on October 18, 1999.

41.    Yet the Defendants Meylan Enterprises Inc. and Alliance Group Inc. and Onuachi's employers at the time of his low back accident and injuries, Defendants Master Builders Inc. d/b/a Harry S. Peterson Company known as SKW MBT Services Inc. and Harry S. Peterson Company and its Parent Corporation, Defendant the Western Group did not provide job for the Plaintiff and they refused to pay indeminity compensations while Onuachi was being treatmed for his low back injuries.

42.    About 2001, Plaintiff filed "Race/Desebility Discrimination Complaint" with the State of Nebraska EEOC charges against the Defendant Meylan Enterprises Inc. After the Nebraska State EEOC's investigations the EEOC sent Onuachi Right to sure in the Federal Court's or State Court's letter which the Plaintiff attached to the "Race/Disability Complaint he filed in the District Court (8-Omaha) in about 2003.

43.    About 2003, Onuachi filed the "Race/Desebility Discrimination Complaint" in the United

--------------------------------------------------------------------------

Page 12 of 82

COMPLAINT

13

States District Court for the District of Nebraska (8 Omaha) because he was a resedent of Doglas County Omaha at that time.

44.     Plaintiff has three infants' children and has no income of any kind at that time. He had to go to labor-Ready services and explained to the lady manager about his conditions and she promised Onuachi light duty jobs with the labor-Ready services. Any time she has light duty jobs, like cleaning jobs, she sends Plaintiff.

45.     The Defendant, John K. Green, attorney at law and his law firm Defendant Pickens, Green & Cleason, L.L.P were representing the Respondent, The Alliance Group Inc. in Plaintiff's low back accident and injuries lawsuit in the Nebraska Workers' Compensation Court and was following Onuachi in bad faith; he followed Plaintiff to a convent store where he cashes his pay checks close to labor-Ready's office, Onuachi walked out on him in annoyance, stating "that he should stop following him that he has three infants' kids that depend on him."

46.     Defendant John K. Green went and told the overall Manager of labor-Ready that Plaintiff had low back injuries, that he is obtaining Steroid injection treatment and physical therapy for the low back injuries. And the manager instructed his workers not to send Onuachi out on a job again because of his low back on-the-job injuries..

47.     Onuachi filed one "Race/Disability Discrimination Complaint" against Defendant, Meylan Enterprises Inc. about 2003 in the United States District Court for the District of Nebraska, (8 Omaha). Plaintiff attached the EEOC Right to file Complaint with the Federal Court or State Court letter to the Complaint he filed in the District Court (8 Omaha)

------------------------------------------------------------------------

Page 13 of 82

COMPLAINT

14

48.     Defendant, Meylan Enterprises Inc. for the contractual reasons between Meylan Enterprises Inc. and The Alliance Group Inc. joined the Respondent, The Alliance Group Inc. to the "Race/Disability Discrimination Complaint" without the knowledge or consent of Onuachi.

49.     The Defendant, John K. Green called Onuachi over the telephone in about 2003, and asked were will be confident to meeting with him. The meeting venue was set at Metro-Politian College library North Omaha Campus.

50.     Onuachi told John K. Green that he resaved a corner in the library for our meeting. He told Plaintiff that he is here because of the Complaint Onuachi filed against Meylan Enterprises Inc. Onuachi told him that he met with another lawyer last time, Respondent Mr. David A. Blagg, that he said that he is from Mr. Dennis R. Riekenberg's law firm, Defendant Cassem, Tierney, Adams, Gotch & Douglas, the attorney representing the Defendant, Meylan Enterprises Inc. in the Race/Discrimination Complaint

51.     Defendant, John K. Green told Plaintiff that he is representing The Alliance Group Inc. Plaintiff told him that he filed Complaint against Meylan Enterprises Inc. and not The Alliance Group Inc. and John K. Green said, is the contractual agreement between the two Companies and he said is not what Onuachi should know. He left without saying any other thing but told Onuachi that he will contact him letter.

52.     Onuachi did not know what the Defendant, John K. Green told the United States District Court for the District of Nebraska's Judge presiding in the Race/Disability Discrimination Complaint and during a conference meeting before the Judge, the District Court Judge asked Onuachi "what is

15

going on out there" and the Plaintiff responded, "Nothing Your Honor" and after that conference meeting, up to date Plaintiff have not heard from the District Court again on the proceedings of the Race/Disability Complaint.

53.     Onuachi was re-training in Computer Programming at that period of time because of his on the-job low back injuries. As the attorneys of record for the employers, Respondent Dennis R. Riekenberg, Defendants John R. Timmermier and John K. Green replaced Onuachi's attorney of record and his law firm with another attorney and a false law firm Onuachi was a Pro-se litigant. Respondent Mr. David A. Blagg with a vocational Rehabilitation Counselor took Plaintiff to the basement of the Church in Creighton University for Deposition.

54.     Plaintiff requested a copy of his deposition be sent to him and the Respondent David A. Blagg promised that he will bring him a copy himself in Creighton University and asked Plaintiff how to reach him in the school. Onuachi gave him his class schedules. Up to date Plaintiff have not received the copy of the deposition.

## Facts About Plaintiff, Uju Onuachi (Employee), Defendant(s), SKW MBT Services Inc. and Harry S. Peterson Company (Employers), and the Contract of hiring Agreement In force at the Time of Plaintiff's Low Back Accident and Injuries (August 8, 1999).

55.     About July 1999, Meylan Enterprises Inc. employees joined the Laborers' International Union of North America, Local 310, changed employers and entered a writhen contractual hiring agreement with new employer(s), Defendant(s), SKW MBT Services Inc. and/or Harry S. Peterson

--------------------------------------------------------------------

Page 15 of 82

COMPLAINT

Company, in Cleveland Ohio to perform a skilled "Hydro-Demolishing" job at Chesterfield Parking Garage Cleveland Ohio.

56.     Plaintiff, Uju Onuachi, was one of the Defendant Meylan Enterprises Inc. employees in Cleveland Ohio, he was hired directly by the Defendant(s) SKW MBT Services Inc. and/or Harry S. Peterson Company, as a Hydro-Demolishing skilled union local 310 laborer to work at the Chesterfield Parking Garage Cleveland Ohio's hydro-demolishing job.

57.     Onuachi was working 8 hours a day, 5 days a week (40 hours a week) and was being compensated with a salary level of $20.40 per hour ($816.00 per week) by the Defendant, Western Group the Parent Corporation of the Defendant Harry S. Peterson Company.

58.     Onuachi's working hours was later changed to 10 hour working days, 4 days a week (40 Hours a week) by Defendants, SKW MBT Services Inc., and Harry S. Peterson Company,

59.     The Contract of hiring agreement was signed by Uju Onuachi (Employee).

60.     The contract of hiring agreement in force at the time of Onuachi's low back accident and injuries was only assessable by the Defendants, SKW MBT Services Inc. and Harry S. Peterson Company.

61.     The Defendant(s), SKW MBT Services Inc. and/or Harry S. Peterson Company egregiously, knowingly, and fraudulently concealed the contract of hiring agreement in force at the time of Onuachi's low back accident.

62.     At all relevant times Plaintiff was unaware that the contract of hiring agreement in force at the

-------------------------------------------------------------------------

COMPLAINT

17

time of his low back accident and injuries was concealed by the Defendants. Had Plaintiff known he would have taken actions to stopping the Defendants from their unlawful conduct.

## The Fraudulent Notification of Injury Report Filed by Defendant Meylan Enterprises Inc.. on August 9, 1999

63.     On August 9, 1999 Defendant Meylan Enterprises Inc. filed a false injury report notifying the Respondent The Alliance Group Inc. about Plaintiff's accident and injuries of about August 8, 1999.

64.     The injury report falsely states that "Employee Reinjured himself from a 4/2/99 hip injury,…"

65.     In the report, Meylan Enterprises Inc. intentionally misrepresented the date of Plaintiff's March 30, 1999 on-the-job Phrenic Nerve Palsy accident and injury to April 2, 1999.

66.     Plaintiff asserts that prior to August 8, 1999 Plaintiff have not had any injury to his hip or complaint of any pain to his lower lumber spine or hip. Meylan Enterprises Inc. knew or should have known that prior to August 8, 1999 that Plaintiff has never complaint of pains or injury to his hip.

67.     Meylan Enterprises Inc. knew that Plaintiff sustained Phrenic Nerve Palsy injury from the accident of March 30, 1999 and egregiously, intentionally, knowingly and fraudulently states that Plaintiff reinjured himself from a 4/2/99 hip injury.

68.     At all relevant times Plaintiff was unaware of the injury notification report of August 9, 1999 filed by Defendant Meylan Enterprises Inc. had Plaintiff been aware of the injury report he would have taken steps to stopping the Defendant's fraudulent intentions.

------------------------------------------------------------------------

Page 17 of 82

COMPLAINT

18

## Facts About the Petitions filed by Phillip G. Wright on Onuachi's Low Back Accident and Injuries in the Nebraska Workers' Compensation Court.

69.     I n 1999, Plaintiff hired Mr. Phillip G. Wright Nebraska attorney at law and his law firm Quinn & Wright to represent him in his low back on-the-job accident and injuries.

70.     Based on Meylan's notification injury report of August 9, 1999, on November 12, 1999 Mr. Phillip G. Wright filed Petition in the Nebraska Workers' Compensation Court on Plaintiff's low back accident and injuries. The petition was docketed at Nebraska Workers' Compensation Court docket 199 No. 2302 captioned "Uju Onuachi vs. Meylan Enterprises Inc." (A true and correct copy of the November 12, 1999 Petition is attached hereto and incorporated by reference as Exhibit "6", containing 2 pages).

71.     On January 5, 2000 the Nebraska Workers' Compensation Court, entered order by Judge Michael J. Fitzgerald presiding in Plaintiff's low back case at Doc: 199 No. 2302 authorized him to Amend the November 12, 1999 Petition. (A true and correct copy of the January 5, 2000 Nebraska Workers' Compensation Court's order is attached hereto and incorporated by reference as Exhibit "7", containing 1 page).

72.     Pursuant to the Trial Court's authorization order to amend the November 12, 1999 Petition, On December 22, 1999 Mr. Wright Amended the November 12, 1999 Petition and added two parties Defendants as Parties Defendants, "Master Builders Inc. d/b/a Harry S. Peterson Company and The Alliance Group Inc." the caption at docket 199 no. 2302 became "Uju Onuachi vs. Meylan Enterprises Inc., Master Builders Inc. d/b/a Harry S. Peterson Company, and the Alliance Group Inc." (A true and

-----------------------------------------------------------------------

Page 18 of 82

COMPLAINT

correct copy of the December 22, 1999 Amended Petition is attached hereto and incorporated by reference as Exhibit "8", containing 9 pages).

73.    After June 4, 2000, Following the discovery of Onuachi's significant elevation of right Hemidiaphragm and the elevation of his blood pressure by Dr. Behrouz Rassekh treating Plaintiff's low back injuries, the Plaintiff's employers at the time of his low back injuries Defendants Master Builders Inc. d/b/a Harry S. Peterson Company, and Harry S. Peterson Company and Onuachi's employers at the time of his Phrenic Nerve Palsy injury Respondent The Alliance Group Inc. and Defendant Meylan Enterprises Inc. collusion with their attorneys of records Respondent Dennis R. Riekenberg, Defendant John R. Timmermier and Defendant John K. Green egregiously and fraudulently built Onuachi's low back accidents and injuries on the words of "Frauds upon the Courts" and "Tortious Conducts" (frauds and deceits) and egregiously concealed Plaintiff's Phrenic Nerve Palsy accident and injury.

74.    A second petition was discovered by Plaintiff in 2011 on his low back accident and injuries which was egregiously and fraudulently filed on April 27, 2000 in the Nebraska Workers' Compensation Court against Defendant Western Waterproofing Co., Inc., A Subsidiary of the Western Group at DOC: 200 No. 0874. (A true and correct copy of the April 27, 2000 Petition is attached hereto and incorporated by reference as Exhibit "9", containing 2 pages).

75.    The basis of the fraudulent Petition filed by the employers' attorneys of records, Respondent Dennis R. Riekebberg, Defendant John R. Timmermier and Defendant John K. Green "Officers of the Court" were to confer Plaintiff's low back accident and injuries Parties' and Subject Matter's Jurisdictions to the Nebraska Workers Compensation Court.

------------------------------------------------------------------------

COMPLAINT

20

76.     Prior to 2011, Plaintiff was unaware that a fraudulent petition was filed on his behalf in the Nebraska Workers' Compensation Court against Defendant Western waterproofing Co., Inc., a subsidiary of the Western Group on his low back accident and injuries. Had Plaintiff been away of the fraudulent Petition he would have stopped the Defendants' fraudulent conduct.

## Facts About the Discovery of Onuachi's Thoracic Area Injury by Dr. Behrouz Rassekh

77.     On or about June 4, 2000, during Onuachi's admission to Jennie Edmundson Hospital, for his low back myelography and surgery, Dr. Behrouz Rassekh found that Onuachi's past medical history has been essentially "Unremarkable" because Onuachi's chest x-ray showed significant elevation of his right hemidiaphragm and elevation of his blood pressure.

78.     Onuachi was unaware of the elevation of his right diaphragm and elevation of his blood pressure and Dr. Rasskh did not inform the Plaintiff of his findings.

79.     On August 9, 2000 the Defendants' attorneys of record in Onuachi's low back accident and injuries' lawsuit Respondent, Dennis R. Riekenberg, Defendants, John R. Timmermier, and John K. Green and Onuachi's attorney of record for his low back lawsuit, Phillip G. Wright conducted a deposition on Dr. Rassekh's findings of the elevation of Plaintiff's right hemidiaphragm and blood pressure. Onuachi was unaware of the deposition of his Thoracic area acid and injury because he was induced by his attorney, Phillip G. Wright, that the deposition was the continuation of the deposition of

COMPLAINT

21

his on-the-job law back accident and injuries. During the deposition, Onuachi disclosed the names of his co-workers during the accident of his Phrenic Nerve Palsy injury.

80.      Respondent Dennis R. Riekenberg, Defendants John R. Timmermier, and John K. Green, "Officers of the Court," consciously, deliberately, intentionally and knowingly induced Honorable Michael J. Fitzgerald the Nebraska Workers' Compensation Court Judge that was presiding in Onuachi's low back accident and injuries' lawsuit at DOC: 199 No. 2302. The attorneys induced the said Judge into believing that the August 9, 2000 deposition was the continuation of Onuachi's low back accident and injuries' deposition and that neither Respondent The Alliance Group Inc. nor their attorney of record, Defendant John K. Green where present during the August 9, 2000 deposition during which the Plaintiff disclosed the names of his co-workers during the time of his Phrenic Nerve Palsy Injury.

81.      However, that was not true and was to induce Judge Michael J. Fitzgerald to giving them more time to investigate Onuachi's Phrenic Nerve Palsy accident and injury.

82.      Onuachi asserts that all the attorneys of record in his low back lawsuit, Dennis R. Riekenberg, John R. Timmermier, John K. Green and Phillip G. Wright, where present at the deposition of August 9, 2000, during which Onuachi disclosed the names of his co-workers on March 30, 1999 during the time of his on-the-job Phrenic Nerve Palsy accident and injury in Springfield Illinois Power Plant.

83.      Judge Michael J. Fitzgerald was actually induced, on September 20, 2000, the Nebraska Workers' Compensation Trial Court entered order by Judge Michael J. Fitzgerald   stating "The Court is advised that the deposition of Plaintiff is progress and is not yet complete. During the deposition, the Plaintiff has disclosed names of co-workers. The names of the co-workers' were disclosed to John R.

---------------------------------------------------------------------

Page 21 of 82

COMPLAINT

22

Timmermier and Dennis Riekenberg on or about August 9, 2000, I do not know if and when the names were disclosed to The Alliance Group and its Counsel John Green…. The trial was original scheduled for September 5, 2000, and is hereby continued."

## Facts About Onuachi's Thoracic Area Accident and Injury (Phrenic Nerve Palsy)

84.     Phrenic Nerve Palsy Injury (Paralysis of the Right Diaphragm) sustained by Plaintiff in the scope and cause of his employment with the Defendant Meylan Enterprises Inc. during the accident of March 30, 1999 is a latent and progressive injury.

85.     Plaintiff, Uju Onuachi discovered that on-the-job Phrenic Nerve Palsy injury was a compensable disability about November of 2004 and pursuant to Nebraska State Law,  Neb. Rev. Stat. §48-137 on March 14, 2005 Plaintiff filed petition against Respondent The Alliance Group Inc. and Defendant Meylan Enterprises Inc. plaintiff's employer at the time of the accident.

86.     The March 14, 2005 Petition was not trialed in the court because of "Fraud upon the Court" Practiced by Defendants, Cassem, Tierney, Adams, Gotch & Douglas, Timmermier, Gross & Prentiss, and Pickens, Green & Cleason, L.L.P perpetuated by Respondent Dennis R. Riekenberg, Defendant John R. Timermmier and Defendant John K. Green "Officers of the Court." The Fifth Amendment of the Constitution provides in pertinent part that "none be deprived of life, liberty, or property, without Due Process of law..." Due Process is denied when a meaningful and merit Petition is denied as in this cause.

---------------------------------------------------------------------

COMPLAINT

23

## Salient Facts About the Defendants' Stipulation Following the Deposition and Investigations of Onuachi's Phrenic Nerve Palsy Accident and Injury

87.    Following the discovery of Onuachi's Phrenic Nerve Palsy injury, the August 9, 2000 deposition and the investigations, Respondent, Dennis R. Riekenberg, Defendants, John R. Timmermier, and John K. Green and Onuachi's attorney of record for his low back lawsuit, Phillip G. Wright found that the accident and injuries of Plaintiff's low back did not relate to Plaintiff's accident and injury of his thoracic area. They further found that the Respondent The Alliance Group Inc. and Defendant Meylan Enterprises Inc. were Onuachi's employers at the time of his Phrenic Nerve Palsy accident and injury and that Defendants, SKW MBT Services Inc. and Harry S. Peterson Company were Onuachi's employers at the time of his low back accident and injuries. Furthermore, they found that the accident of about August 8, 1999 at Chesterfield Parking Garage Cleveland Ohio caused Plaintiff's Disc Herniations at L2-L3, L4-L5, and L5-S1 and that the accident of March 30, 1999 at Springfield Illinois Power Plant caused Plaintiff's Phrenic Nerve Palsy Injury.

88.    They at this point reached stipulation 1) that the Respondent The Alliance Group Inc. and Defendant Meylan Enterprises Inc. is responsible for Plaintiff's Phrenic Nerve Palsy Injury and 2) that Defendants, SKW MBT Services Inc. and Harry S. Peterson Company and its Parent Corporation, The Western Group were responsible for Plaintiff's low back accident and injuries.

89.    Douglas R. Stave attorney at law and his law firm, Stave, Schatz, Dougherty & Stave were representing Defendant, SKW MBT Services Inc. in Plaintiff's low back lawsuit withdraw and John R. Timmermier and his law firm Defendant  Timmermier, Gross & Prentiss, took over representing

COMPLAINT

24

Defendants, SKW MBT Services Inc., Harry S. Peterson Company and Western Waterproofing Co., Inc., a Subsidiary of the Western Group.

## Facts About the Fraudulent First Report of Alleged Occupational Injury or Illness of Onuachi's Phrenic Nerve Palsy Accident and Injury filed by the Respondent The Alliance Group Inc. in the Nebraska Workers' Compensation Court.

90.    Following Defendants' stipulations after the deposition of August 9, 2000, on August 23, 2001 the Respondent, The Alliance Group Inc. filed the First Report of Alleged Occupational Injury or Illness of Plaintiff's Phrenic Nerve Palsy injury in the Nebraska Workers' Compensation Court.

*91.*    In the report, the Respondent The Alliance Group Inc. egregiously, intentionally and Knowingly Suppressed and misrepresented the facts that Onuachi sustained "Phrenic Nerve Palsy Injury" from the accident of March 30, 1999, and the date of the Accident March 30, 1999 as well as the terms of Plaintiff's accident and injury, including  (1) number of days worked per week (2) Plaintiff's wages per week (4) date Plaintiff notified his employer (5) if injury/illness occurred in employers premises, (6) postal code where injury/illness occurred, (6) type of injury or illness, (7) part of body affected, (8) how injury/illness or abnormal health condition occurred, (9) cause of injury, and (10) initial treatment.

*92.*    At all relevant times, Plaintiff was unaware of the suppressions and misrepresentations of

-------------------------------------------------------------------------

Page 24 of 82

COMPLAINT

25

these material facts by the Respondent The Alliance Group Inc. in the First Report of Alleged Occupational Injury or Illness. Had Plaintiff be aware, he would have taken steps to stopping the Respondant The Alliance Group Inc.'s bad intentions.

**Facts About the Fraudulent First Report of Alleged Occupational Injury or Illness of Onuachi's Low back Injuries filed by Defendant the Western Waterproofing Co., Inc., A Subsidiary of the Western Group in the Nebraska Workers' Compensation Court.**

93.     Also, Following Defendants' stipulations after the deposition of August 9, 2000, the First Report of Alleged Occupational Injury or Illness of Plaintiff's low back injuries was egregiously and fraudulently filed by Defendants, Timmermier, Gross & Prentiss, and John R. Timmermier in the Nebraska Workers' Compensation Court on May 9, 2000 purporting the Report of Alleged Occupational Injury or Illness to have been filed by the Defendant Western Waterproofing Co., Inc., a Subsidiary of the Western Group.

94. In the report, the Defendants egregiously,  intentionally and knowingly suppressed and Misrepresented the Facts that Onuachi sustained "Herniated Disk at levels L2-L3, L4-L5, and L5-S1 of his low back as well as the terms of Plaintiff's low back accident and injuries, including (1) Date Hired (2) Jurisdiction (3) Date Employer Notified (4) Did Injury/Illness Occur In Employer's Premises, (5) Postal Code Where Injury/Illness Occurred, (6)  Date Disability Began, (7) Type of Injury or Illness (Describe), (8) Date Returned to Work, and (9) part of Body affected (Describe).

95. At all relevant times, Plaintiff was unaware of the suppressions and misrepresentations of

COMPLAINT

26

these material facts by Defendants in the First Report of Alleged Occupational Injury or Illness of his low back accident and injuries. Had Plaintiff been aware, he would have taken steps to stopping the Defendants' bad faith.

## Acts Leading to the Recusal of Judge Michael J. Fitzgerald the first Nebraska Workers' Compensation Court Judge that Presided in Onuachi's Low Back Accident and Injuries

96. Three Nebraska Workers' Compensation Court Judges presided in Plaintiff's low back accident and injuries recused themselves from Onuachi's low back accident and injuries case, before Judge Tom E. Stine's order of January 30, 2014 disposing of the petition of Plaintiff's low back accident and injuries because of frauds upon the Court Practiced by Defendants, Cassem, Tierney, Adams, Gotch & Douglas, Timmermier, Gross & Prentiss, and Pickens, Green & Cleason, L.L.P perpetuated by Respondent Dennis R. Riekenberg, Defendant John R. Timermmier and Defendant John K. Green "Officers of the Court."

97. M/s Shelia Richards, Nebraska Workers' Compensation Court employee intentionally and Fraudulently told Judge Michael J. Fitzgerald, the Nebraska Workers' Compensation Court Judge presiding in Plaintiff's low back accident and injuries' case at Doc: 199 No. 2302 that "Plaintiff called the Court on February 2, 2001 and told her that his attorney, Phillip G. Wright told him to lie on his low back functional capacity evaluation."

98. However, this was not true and was an intentionally misrepresentation of material facts.

-------------------------------------------------------------------------

Page 26 of 82

COMPLAINT

By February 2, 2001, Plaintiff have incurred over $3,500.00 for nonpayment of rent, because Plaintiff's employers refused to pay indemnity compensations while Onuachi was being treatment for the low back injuries even at notices were given to them on several occasions. His Landlord, Mr. Tamal Balad advised Plaintiff to call the Nebraska Workers' Compensation Court and inquire why he was not being paid indemnity compensations by his employers while he was receiving medical treatment for his low back on-the-job injuries according to Nebraska Workers' Compensation Court's Act.

99. Plaintiff's Landlord initiated the phone call to Nebraska Workers' Compensation Court, Plaintiff spoke to M/s Shelia Richards and asked, what was holding his case and why the Defendants were not paying him indemnity compensations according to Nebraska workers' Compensation Court's Act while he was receiving medical treatment for his low back injuries that he is deliquescent in his rent.

100.     The February 2, 2001 intentional misrepresentation of material facts of the telephone conversations were unconscionable scheme calculated to interfere with the Nebraska Workers' Compensation Court's ability impartially to adjudicate Plaintiff's matter by improperly influencing the trier or unfairly hampering the presentation of Plaintiff's claim to the Court by officers of the Court, M/s Shelia Richards, Dennis R. Riekenberg, John R. Timmermier and John K. Green.


**Facts about the Intentions of the Respondent Dennis R. Riekenberg, Defendant John R. Timmermier and Defendant John K. Green in the above unconscionable scheme**

101.     To intentionally induce Judge Michael J. Fitzgerald, the Nebraska Workers' Compensation

COMPLAINT

Court Judge presiding in Plaintiff's lawsuit at Doc: 199 No. 2302 who have knowledge of the parties Defendants named in the Amended Petition of December 22, 1999 to recuse himself.

102.     To intentionally withdraw Exhibits that has been offered by Plaintiff and were received by The Nebraska Workers' Compensation Trial Court before Judge Michael J. Fitzgerald for the trial of Plaintiff's low back on-the-job injuries of about August 8, 1999.

103.     Judge Michael J. Fitzgerald was actually deceived by M/s Shelia Richards' fraudulent misrepresentation of the February 2, 2001 phone call. On February 9, 2001 at the summons meeting called by Judge Michael J. Fitzgerald, the Judge ordered the attorneys of records to withdraw the Exhibits offered by Plaintiff and were received by the Nebraska Workers' Compensation Trial Court before Judge Michael J. Fitzgerald for the trial of Plaintiff's low back on-the-job injuries of about August 8, 1999.

104.     About February 12, 2001 Judge Michael J. Fitzgerald recused himself from Plaintiff's case at dockets 199 no. 2302, Judge Michael P. Cavel took over presiding in Plaintiff's low back injuries' case at docket 199 no. 2302. After the recusal of Judge Michael J. Fitzgerald and the withdrawal of Exhibits offered, Plaintiff's low back accident and injuries' case was built on the words of "Frauds upon the Court," "Frauds and Lies" with the intent on the part of Defendants of inducing reliance and intentionally suppressions, misrepresentations, fraudulent fabrications and concealments of material facts by Defendants to deceive the Nebraska Workers' Compensation Court and to deceive and cheat Plaintiff of his legal rights provided by worker's compensation court for the exclusive remedies of the

COMPLAINT

29

"Act" for Plaintiff's low back on-the-job injuries and to conceal plaintiff's on-the-job Phrenic Nerve Palsy injury.

105.   The constructive conspiracy of material misrepresentation of February 2, 2001 Telephone conversations were that species of fraud that defiles the court itself and was a fraud perpetrated by officers of the court M/s Shelia Richards, Dennis R. Riekenberg, John R. Timmermier, and John K. Green so that the Nebraska Workers' Compensation Court machinery could not perform in the usual manner in its impartial task of adjudicating cases in Plaintiff's low back injuries' and Phrenic Nerve Palsy injury's cases. And this was part of unconscionable plan designed by Dennis R. Riekenberg, John R. Timmermier, and John K. Green to deceive the Nebraska Workers' Compensation Trial Court into believing facts that were not true. *Moore Federal Practice* 3d Â¶ 60.21[4][a] (3d ed. 2003); *Oxxford Clothes XX, Inc. v. Expeditors Int, Inc.,* 127 F.3d 574, 578 (7th Cir. 1997); *Pumphrey v. K.W. Thompson Tool Co.;* 62 F.3d 1128, 1131 (9th Cir. 1995) (citation omitted); *Transaero, Inc. v. La Fuerza Area Boliviana,* 24 F.3d 457, 460 (2d Cir. 1994); *Dixon v. Commissioner* No. 00-70858, 2003 U.S. App. LEXIS 4831, at *11-12 (9th Cir. Mar. 18, 2003), *amending* 316 F.3d 1041 (9th Cir. 2003); or *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1998) (citation omitted); *Bulloch v. United States,* 763 F.2d 1115, 1121 (10th Cir. 1985); and *Kenner v. C.I.R.,* 387 F.3d 689 (1968); *7 Moore's Federal Practice,* 2d ed., p. 512, Â¶ 60.23. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final."

---------------------------------------------------------------------------

Page 29 of 82

COMPLAINT

30

<u>Facts About the Fraudulent Stipulated Motion to Withdraw Filed by Defendants in the Nebraska Workers' Compensation Court for Phillip G. Wright and his Law Firm Quinn and Wright to Withdraw from Representing Onuachi in his Low Back Accident and Injuries and the Introduction of false Law Firm by Employers' Attorneys of Record to Represent Onuachi for his Low Back Accident and Injuries.</u>

106.     After the recusal of Judge Michael J. Fitzgerald, Phillip G. Wright introduced Mark Alan Forehand as his associate, a new attorney hired by his law firm, Quinn and Wright.

107.     On March 7, 2001 Mark Alan Forehand, Defendant John K. Green and Defendant Pickens, Green & Cleason, L.L.P Nebraska attorney and his law firm who represented the Respondent The Alliance Group Inc. at Doc 199 no. 2302, Respondent Dennis R. Riekenberg Nebraska attorney and Defendant Cassem, Tierney, Adams, Gotch & Douglas, his law firm, who represented Defendant Meylan Enterprises Inc. at Doc. 199 no. 2302, and Defendant John R. Timmermier Nebraska attorney and his law firm Defendant Timmermier, Gross & Prentiss, who represented Master Builders Inc. d/b/a Harry S. Peterson Company, Western Waterproofing Co., Inc., a Subsidiary of the Western Group, and Harry S. Peterson Company at Doc. 199 no. 2302 and Doc 200 no. 0874 filed stipulated motion in the Nebraska Workers' Compensation Court for Phillip G. Wright to withdraw from representing Plaintiff.

108.     Plaintiff was unaware of the intentions of these officers of the Court and their law firms named above to intentionally introduce a false law firm, Mark Alan Forehand P.C. Limited to replace Phillip G. Wright and his law firm Quinn and Wright law firm in Plaintiff's low back accident and

-----------------------------------------------------------------------

Page 30 of 82

<u>COMPLAINT</u>

31

injuries' lawsuit. Had Plaintiff known, that Mark Alan Forehand P.C. was a false law firm, he would not have signed the March 7, 2001 stipulated motion.

109.     On March 14, 2001 the Nebraska Workers' Compensation Court entered order granting The March 7, 2001 stipulation motion by Judge Michael P. Cavel Authorizing Phillip G. Wright to withdraw from representing Plaintiff.

110.     After the withdrawal of Phillip G. Wright, the Respondent, Dennis R. Riekenberg, Defendants John R. Timmermier and John K. Green Officers of the Court fraudulently removed Defendant, Master Builders Inc. d/b/a Harry S. Peterson Company that was paying for Plaintiff's prescription drugs for his low back job related injuries as party Defendant and replaced Defendant, Harry S. Peterson Company as party Defendant in plaintiff's Amended Petition of December 22, 1999 at docket 199 no. 2302.

111.     Plaintiff noticed this reckless fraudulent  conducts of these "Officers of the Court" and attempted to correct their wrong conducts and was jailed in the Lancaster County Jail for about 72 hours.

112.     Plaintiff's low back on-the-job accident and injuries of about August 8, 1999 was tried on June 11, and 12, 2001 under a false law firm, Mark Alan Forehand P.C. Limited in the Nebraska Workers' Compensation Court before Judge Michael P. Cavel.

113.     During the trial of June 11, and 12, 2001 Mr. Vance Higgs testified under oath as Meylan Employee who represented Meylan Enterprises Inc. in Cleveland Ohio at the time of the union Local 310 conflict.

-------------------------------------------------------------------------

Page 31 of 82

COMPLAINT

32

114.     However, that was not true; Mr. Vance Higgs is not Meylan Enterprises Inc. employee, Meylan Enterprises Inc. flue in Mark Stiggy the company's general field supervisor from Omaha Nebraska who represented Meylan Enterprises Inc. during the Union conflict. Therefore, Mr. Higgs' testimony at the trial of June 11, and 12 in the Nebraska Workers' Compensation Court before Judge Michael P. Cavel were false.

115.     On July 13, 2001, the Nebraska Workers' Compensation Court entered Judgment based on "Fraud upon the Court" and "torturous conductors" by Plaintiff's employers and their attorneys of records by Judge Michael P. Cavel on Plaintiff's low back on-the-job injuries of about August 8, 1999.

116.     After the July 13, 2001 Judgment, Mark Alan Forehand and the false law firm, Mark Alan Forehand P.C. Limited requested to withdraw from representing Plaintiff before the Nebraska Workers' Compensation Court Three Panel Judge because he refused to Appeal the July 13, 2001 Nebraska Workers' Compensation Court erroneous Judgment, which was obtained by successful "Fraud upon Court" Practiced  by Defendants, Cassem, Tierney, Adams, Gotch & Douglas, Timmermier, Gross & Prentiss, and Pickens, Green & Cleason, L.L.P perpetuated by Respondent Dennis R. Riekenberg, Defendant John R. Timermmier and Defendant John K. Green "Officers of the Court." and "torturous Conducts" by Plaintiff's employers of his low back accident and injuries along with the other Defendants named in this case to deceive the Nebraska Workers' Compensation Court and cheat Plaintiff from compensations of his job related injuries as provided by the exclusive remedies of the Act.

117.     On November 30, 2001 the Nebraska Workers' Compensation Court Three Panel Judge

-----------------------------------------------------------------------

Page 32 of 82

COMPLAINT

33

authorized Mark Alan Forehand and the false law firm, Mark Alan Forehand P.C. Limited to withdraw

from representing Plaintiff.

118.    At all relevant times, Plaintiff was unaware that Mark Alan Forehand P.C. was a False

Law firm, had Plaintiff known, he would have not agreed to be represented by Mark Alan Forehand P.C.

Limited, and Onuachi would have not singed the stipulated motion.


Facts About the Fraudulent Petition of April 27, 2000 Against Western Waterproofing

Co., Inc., a Subsidiary of the Western Group

119.    After the recusal of Judge Michael J. Fitzgerald, Respondent Dennis R. Riekenberg,

Defendants John R. Timmermier, and John K. Green "Officers of the Court," egregiously, intentionally

and fraudulently suppressed and misrepresented certain material facts about the parties Defendants in

docket 199 no. 2302, and fraudulently fabricated the April 27, 2000 petition in which they fraudulently

connected Defendant, Western Waterproofing Co., Inc., A Subsidiary of the Western Group as Plaintiff's

employer at the time of his low back accident and injuries at docket 200 no. 0874 to confer Jurisdiction of

Plaintiff's low back accident and injuries to Nebraska Workers' Compensation Court;

120.    Defendants knew and intentionally dropped and concealed Defendant Master Builders

Inc. d/b/a Harry S. Peterson Company known as SKW MBT Services Inc. as party Defendant at docket

199 no. 2302 and intentionally and fraudulently added Defendant Harry S. Peterson Company as party

Defendant at docket 199 no. 2302.

121.    Plaintiff discovered the fraudulent altering of the caption of the Amended Petition of

--------------------------------------------------------------------------

Page 33 of 82

COMPLAINT

34

December 22, 1999 at Docket 199 no. 2302 by Respondent, Dennis R. Riekenberg, Defendants, John R. Timmermier, and John K. Green "Officers of the Court." Plaintiff was trying to have the parties Defendants named at the Caption of the Amended petition remain as it was named originally, on the process Plaintiff was jailed in the Lancaster County Jail for about 72 hours in 2005.

122.    Defendant John R. Timmermier, egregiously, carefully, fraudulently, recklessly, intentionally and knowingly filed the First Report of Alleged Occupational Injury or Illness of Plaintiff's low back accident and injuries in the Nebraska Workers' Compensation Court purporting Defendant Western Waterproofing Co., Inc., A Subsidiary of the Western Group as Onuachi's employer on August 8, 1999 at the time of his low back accident and injuries.

123.    Defendants egregiously, fraudulently, intentionally and knowingly sent an injury notification letter purporting the letter is from Carl Roach Claim Representative of Travelers Property Casualty of Cleveland Ohio. In the letter, they, fraudulently clamed Defendant Western Waterproofing Co., Inc., A Subsidiary of the Western Group to be Onuachi's employer on August 8, 1999  at the time of Onuachi's low back accident and injuries.

124.    The Defendants carefully, intentionally, knowingly and falsely fabricated Onuachi's 1999 W-2 Wages and Tax Statements purporting it to have been filed by Defendant Western Waterproofing Co., Inc., A Subsidiary of the Western Group.

125.    Defendants egregiously, fraudulently, intentionally and consciously filed the April 27, 2000 lawsuit found at Nebraska Workers' Compensation Court docket 200 no. 0874 against Defendant Western Waterproofing Co., Inc., A Subsidiary of the Western Group.

-----------------------------------------------------------------------

COMPLAINT

35

*126.*    Defendants, fraudulently fabricated Nebraska Workers' Compensation consolidated order consolidating the petition at DOC: 199 NO. 2302 to the Petition at Doc: 200 No. 0874.

127.    The consolidation order was not entered by the Nebraska Workers' Compensation Court.

128.    On April 6, 2013 the Nebraska Workers' Compensation Court Clerk stated in her Interoffice Mail to the Clerk of Nebraska Court of Appeals as follows: "Please note that the above captioned case is <u>not</u> consolidated with docket number 199-2302 *(Uju Onuachi va. Meylan Enterprises, Inc.)* in the Nebraska Workers' Compensation Court; therefore, two separate appeals have been processed and forwarded to your office."

129.    This was a fraud designed to subvert the integrity of the Nebraska Workers' Compensation Trial Court in Plaintiff's low back on-the-job accident and injuries. It is an unconscionable plan which is designed to improperly influence the Court in its decisions and/or egregious misconduct directed to the Court. The impartial function of the Nebraska Workers' Compensation Trial Court was directly influenced by the consolidation order in adjudicating Plaintiff's Matter in docket 199 no. 2302.

130.    The above described frauds on the Court by Nebraska attorneys, Dennis R. Riekenberg, John R. Timmermier and John K. Green Officers of the Court were designed to:

131.    Confer Plaintiff's low back accident and injuries' jurisdiction to Nebraska Workers' Compensation Court. This type of conduct is outrageous.

132.    Deceive and intentionally interfere with the proper functioning and decision-making of the

-----------------------------------------------------------------------

Page 35 of 82

<u>COMPLAINT</u>

36

Nebraska Workers' Compensation Trial Court in Plaintiff's low back on-the-job accident and injuries of about August 8, 1999.

133.    The Nebraska Workers' Compensation Court was actually deceived by these fabrications, suppressions, misrepresentations and concealments of the above material facts in their decisions of Plaintiff's low back on-the-job accident and injuries as seen in the July 13, 2001 Nebraska Workers' Compensation Trial Court Award.

134.    In Plaintiff's case, the fraud was directed at the judicial machinery itself. The fraud subverted the integrity of the courts. The fraud was designed to deceive the courts into believing facts that were not true. The courts were unable to adjudicate the matter in Plaintiff's low back on-the-job accident and injuries of about August 8, 1999 properly because the courts were influenced by false information.

135.    In this case, order of the Nebraska Workers' Compensation Court was fabricated by the Respondent Dennis R. Riekenberg, John R. Timmermier and John K. Green officers of the Court. The attorneys were knowingly participating in the fraud on the court. Bogus documents were placed into the record. Lies were told under oath, and in various filings with the courts, and schemes were concocted to attempt to cover-up certain falsehoods. Dennis R. Riekenberg, John R. Timmermier and John K. Green "Officers of the Court" were involved in all of these.

136.    Under Federal law, when any officer of the court has committed "fraud on the court," the orders and judgment of that court are void, of no legal force or effect.

137.    The above aforementioned conducts of Respondent, Dennis R. Riekenberg, Defendants,

------------------------------------------------------------------------

Page 36 of 82

COMPLAINT

37

John R. Timmermier and John K. Green Officers of the Court constitutes egregiously, consciously, deliberately, intentionally, carefully and knowingly to misled the Nebraska Workers' Compensation Trial Court, and the Court was actually misled by these conducts of Dennis R. Riekenberg, John R. Timmermier and John K. Green in the July 13, 2001 Award.

138.    Therefore, for the above reasons, the July 13, 2001 Judgment of the Nebraska Workers' Compensation Court is a "void judgment" and also Award, and all Nebraska Workers' Compensation orders following the July 13, 2001 Award are also "Void" as such should be "Set Aside" in these action.

139.    The full faith and credit clause of the constitution only applies to judgments that are not void. But in an environment where the attorneys "officers of the Court" disregard the law and the rules the Court made, how can the public rely on this judgment to be true judicial Act that will withstand the tests of the statute of frauds? If this judgment is unreliable, it is a "Void Judgment." Our justice system is based on "common law". When a new circumstance is decided, it become "precedent" and other courts rely on these decisions as a basis for their decision, just as the cases are cited. The Nebraska Workers' Compensation Trial Court was the first to decide on Plaintiff, Uju Onuachi's low back accident and injuries an important case and then the Three Panel Judge of Nebraska Workers' Compensation Court and the Nebraska Court of Appeals ruled the same way citing the Trial Court and no other cases. If the Trial Court case is ruled "Void," doesn't that make the cases that rely on this case void as well? Plaintiff knows by law, it does. *Austin v. Smith*, 312 F.2d 337, 343 (1962); *English v English*, 72 Ill.App.3d 736, 393 N.E.2d 18 (1st Dist. 1979); and V.T.A., Inc. V. Airco, Inc.,*supra @ 221*; Venable v. Haislip, 721 F.2d 297, 298 (1983).

---------------------------------------------------------------------

Page 37 of 82

COMPLAINT

38

140.     There may be some other way to bless the July 13, 2001 Award, but if there is, the Plaintiff doesn't see it. The Plaintiff fail to envision a solution that takes judgment of the court, that is obtained by "Fraud upon the Court," that would be sufficient to make the July 13, 2001 and the Award and orders following it valid Judgments and orders of the court. And if it cannot be validated, it is void. Void means that it never happened, and if it never happened, it's a do over with. *Moore Federal Practice* 3d §¶ 60.21[4][a] (3d ed. 2003); *Oxxford Clothes XX, Inc. v. Expeditors Int, Inc.,* 127 F.3d 574, 578 (7th Cir. 1997); *Pumphrey v. K.W. Thompson Tool Co.;* 62 F.3d 1128, 1131 (9th Cir. 1995) (citation omitted); *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 460 (2d Cir. 1994); *Dixon v. Commissioner* No. 00-70858, 2003 U.S. App. LEXIS 4831, at *11-12 (9th Cir. Mar. 18, 2003), *amending* 316 F.3d 1041 (9th Cir. 2003); or *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1998) (citation omitted); *Bulloch v. United States,* 763 F.2d 1115, 1121 (10th Cir. 1985); and *Kenner v. C.I.R.,* 387 F.3d 689 (1968); *7 Moore's Federal Practice,* 2d ed., p. 512, §¶ 60.23. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final."

## Facts About the Fraudulent Initiations of the Concealment of the Contract of Hiring Agreement In force at the Time of Plaintiff's Low Back Accident and Injuries

141.     After the recusal of Judge Michael J. Fitzgerald, after the withdrawal of Exhibits offered by Plaintiff for the trial of his low back on-the-job injuries, and after the withdrawal of Phillip G. Wright and his law firm, Quinn and Wright, Defendants Meylan Enterprises Inc., Western Waterproofing Co., Inc., A Subsidiary of the Western Group, SKW MBT Services Inc., Harry S. Peterson Company and

39

Western Group along with their attorneys of records "Officers of the Court" Respondent, Dennis R.
Riekenberg; Defendants John R. Timermmier; and John K. Green egregiously, fraudulently,
intentionally, and knowingly fabricated:

> a. Subcontract Agreement between Defendants Harry S. Peterson Company and Meylan
> Enterprises Inc. (A true and correct copy of the Subcontract Agreement is attached hereto
> and incorporated by reference as Exhibit "10", containing 3 pages)

> b. The supplementary Conditions to Subcontract Agreement between Defendants Harry S.
> Peterson Company and Meylan Enterprises Inc. (A true and correct copy of the
> supplementary Conditions to Subcontract Agreement is attached hereto and incorporated
> by reference as Exhibit "11", containing 2 pages)

142.     About May 19, 2014, Onuachi came into possession of documents entitled "Subcontract
(Limited Form)" and "Supplementary Conditions to Subcontract Between Harry S. Peterson Company
("HSP") a division of Western Waterproofing Inc. and Meylan Enterprises Inc. ("Subcontractor")." The
Subcontract (Limited Form) purported to be effective as of July 16, 1999.

### "Subcontract (Limited Form)"

143.     The Subcontract Agreement states that "The Harry S. Peterson Company, A Division of
The Western Waterproofing Co., Inc., a Missouri Corporation with an office at 100 Hayes Drive, Suite A,
Brooklyn Hts., Ohio, ("Contractor") and Meylan Enterprises Inc., with its office at 6225 South 60th
Street, Omaha, NE. 68117, ("Subcontractor") for a portion of the work Contractor has contracted to

40

perform Hydrodemolition (see Exhibit A) designated bellow, at Chesterfield Parking Garage ("Project"):"

144.    The Subcontract Agreement identifies the names of all the corporations involved in the project of Chesterfield Parking Garage Cleveland Ohio stating as follows: "The following, collectively referred to as "Primary Parties" are involved in the project; Subcontractor: Meylan Enterprises Inc. 6225 South 60th Street Omaha NE. 68117. Contractor: The Harry S. Peterson Company 100 Hayes Drive, Suite A Brooklyn Hts, OH. 44131. Owner: Metropolitan Properties of America, Inc. 175 Federal Street Boston, MA. 02110. Architect/Engineer: Walker Parking Consultants, Inc. 525 Avis Drive, Suite 1 Ann Arbor, MI 48108…."

145.    The Subcontract Agreement was not signed by any of the parties but was offered by the Defendants as an Exhibit during the June 11 and 12 trial of Onuachi's low back accident and injuries and was received as an Exhibit by the Nebraska Workers' Compensation Court before Judge Michael P. Cavel.

146.    The Subcontract Agreement Intentionally omitted to identify Defendant Master Builders Inc. d/b/a Harry S. Peterson Company known as SKW MBT Services Inc.

147.    The Subcontract Agreement intentionally fails to identify or state the duty Defendant SKW MBT Services Inc. played in the Hydrodemolition contract at Chesterfield Parking Garage Cleveland Ohio.

## "Supplementary Conditions to Subcontract"

------------------------------------------------------------------------

COMPLAINT

41

148.     The supplementary Conditions to Subcontract Agreement states "Labor Accommodation. In order to satisfy local requirements of collective bargaining agreement to which HSP is signatory, and to which Subcontractor is not, and solely for the convenience of Subcontractor, AND SPECIACALLY AT SUBCONTRACTOR'S REQUEST, HSP will employ the all equipment operators and laborers necessary to perform the operation included in Subcontractor's scope of work, Subcontractor will retain the full responsibility for supervision of the operation of its equipment, including but not limited to, the operation of its equipment, all water filtering, and treatment necessary for discharge of the water into the public drainage system, and all clean-up of debris."

149.     The supplementary Conditions to Subcontract Agreement also states Subcontractor specifically agrees that all of the workers shall be paid, by HSP in its regular payroll cycle, all wages and benefits, and be charged all union initiation fees and dues, necessary to satisfy all requirements of collective bargaining agreements in place for the work, and any other payments or withholdings required by applicable law including, but not limited to, federal, state and local taxes, workers compensation and unemployment charges (all of which shall be collectively referred to herein as "Payroll Costs")…."

150.     The supplementary Conditions to Subcontract Agreement furthermore states; "Subcontractor agrees to assume and be responsible for all operations that are included within its scope of work, including the safety of the workers involved, and in addition to the indemnification stated in the general Terms and Conditions of this Subcontract, Subcontractor agrees to protect, indemnify and hold harmless, HSP from and against any claims for injury asserted against HSP by the workers included in the work covered by this Subcontract, who, but for this agreement, would have been on Subcontractor's

Page 41 of 82

COMPLAINT

42

payroll. **This indemnification shall include, but not be limited full reimbursement for cost, expense or damage suffered by HSP due to claims made under the Worker's Compensation laws of the state of Ohio, or any other state that may have jurisdiction. Subcontractor shall provide insurance to cover such claims, and shall name HSP as an additional insured, and such insurance shall be primary and non-contributory to any policy carried by HSP…."**

151.     The supplementary Conditions to Subcontract Agreement was not signed by any of the Parties but was offered by the Defendants as an Exhibit during the June 11 and 12 trials of Onuachi's low back accident and injuries and was received as an evidence by the Nebraska Workers' Compensation Court before Judge Michael P. Cavel.

> Pursuant to Nebraska State law, Neb. Rev. Stat. §48-114, **"In order to transfer liability from the general employer of a loaned employee to a borrowing employer, there must be some consensual arrangement sufficient to create a new employer-employee relationship."** <u>Shamburg v. Shamburg,</u> 153 Neb. 495, 45 N.W.2d 446 (1950).

152.     The Defendants egregiously, intentionally and knowingly omitted to state in the Supplementary Conditions to Subcontract Agreement that the Defendant Meylan Enterprises Inc. employees, of which Plaintiff "Onuachi" was one, entered contract of hiring agreement individually, and changed employers in Cleveland Ohio to perform the hydro-demolishing job at Chesterfield Parking Garage Cleveland Ohio. <u>Shamburg v. Shamburg,</u> 153 Neb. 495, 45 N.W.2d 446 (1950).

153.     The Defendants intentionally and knowingly omitted to state the duty Defendant SKW

--------------------------------------------------------------------

Page 42 of 82

<u>COMPLAINT</u>

43

MBT Services Inc. played in the employment of Plaintiff "Onuachi" in the Supplementary Conditions to Subcontract Agreement.

### Facts About the Fraudulent Indemnity Compensation Benefits Paid to the Plaintiff by Defendants, Meylan Enterprises Inc. and Medical Compensations Benefits Compensated to Plaintiff by Defendant SKW MBT Services Inc. for the Low Back Injuries.

154.      Onuachi, pro-se litigant, Appealed the July 13, 2001 Award of the Nebraska Workers' Compensation Court to be reviewed by the Three Judge Panel of the Nebraska Workers' Compensation Court.

155.      Even at notices were given to the employers and their attorneys of records prior to July 13, 2001 Award the Defendants denied Plaintiff TTD indemnity Compensations according to the worker's compensation exclusive remedies' Act while he was being treated for his low back injuries.

156.      The only compensation Uju Onuachi was obtaining while he was being treated for his low back injuries from Defendant Master Builders Inc. d/b/a Harry S. Peterson Company known as SKW MBT Services Inc. was the payment of the prescription drugs for the low back injuries.

157.      Defendant SKW MBT Services Inc. started to deny Plaintiff medical benefits for his low back injuries on December 14, 2000.

158.      On December 18, 2001, Dr. Rassekh informed Defendants (employers) that Onuachi is still under his care and that he is still having chronic pains because of his low back job related injuries.

159.      Following the Award of July 13, 2001, the Defendant Meylan Enterprises Inc. starts to

---------------------------------------------------------------------

COMPLAINT

44

1  Issuing Plaintiff checks of which the Plaintiff refused to accept because the Award was on Appeal
2  proceedings and some other reasons.

3      160.      During oral argument before the Three Panel Judge of Nebraska Workers' Compensation
4  Court, the Three Panel Judge told the Plaintiff to start receiving Meylan Enterprises Inc. checks as TTD
5  indemnity compensations since he is still under the doctor's care for the work related low back injuries.
6  This was said by Judge James Brown.

7      161.      Onuachi being unaware that the TTD indemnity checks issued by Travelers Insurance
8  Company on behalf of Defendant Meylan Enterprises Inc. were fraudulent, Meylan and their attorney of
9  record, Respondent Dennis R. Riekenberg Knew that the checks were fraudulent and attempted to cover
0  up the falsehood of the TTD indemnity checks in the subsequent report filed by Phoenix Insurance
1  Company of Des Moines Iowa in the Nebraska Workers' Compensation Court.

2      162.      Based on the three Judge review Panel of the Nebraska Workers' Compensation Court
3  instructions, the TTD indemnity compensation Onuachi received from Meylan Enterprises Inc. was for
4  119 weeks at $65.34 per week or $261.36 per month. Plus $16,341.88 indemnity compensations for the
5  period during which Onuachi was under doctor's care before he reached Maximum Medical
6  Improvement (MMI) for his low back injuries of which periods the Defendants refused to pay TTD
7  indemnity compensations even at notices were given to them.

8

-------------------------------------------------------------------------
Page 44 of 82

COMPLAINT

45

**Silent Facts About the Fraudulent Removal of Parties Defendants Named at the Captions**
**of the Amended Petition of December 22, 1999 from Onuachi's Low Back Accident and**
**Injuries and the Petition of March 14, 2005 of Onuachi's Phrenic Nerve Palsy Accident**
**and Injury.**

163.     After the Nebraska Workers' Compensation Court's Award of July 13, 2001 by Judge Michael P. Cavel, the Office of the Clerk of the Nebraska Worker's Compensation Court in Collusion with the attorneys of record of Plaintiff's employers, Dennis R. Riekenberg, John R. Timmermier and John K. Green "Officers of the Court" egregiously and fraudulently removed Parties' Defendants named at the captions of the Amended Petition of December 22, 1999 and the Petition of March 14, 2005 by:

c.   Removing Defendants Master Builders Inc. d/b/a Harry S. Peterson Company and the Alliance Group Inc. named as Parties Defendants from the caption of December 22, 1999 low back accident and injuries' Amended Petition naming only Meylan Enterprises Inc. as the Party Defendant in Plaintiff's low back accident and Injuries' Amended Petition'

d.   Removing the Respondent The Alliance Group Inc. named as Party Defendant from the Caption of Plaintiff's Phrenic Nerve Palsy Accident and Injury Petition of March 14, 2005 and naming only Meylan Enterprises Inc. as Party Defendant in Plaintiff's Phrenic Nerve Palsy Accident and Injury's Petition.

164.     The above "Fraud upon the Court" by the Office of the Clerk of the Nebraska Workers' Compensation Court and Nebraska attorneys, Dennis R. Riekenberg, John R. Timmermier and John K. Green "Officers of the Court," deceived the Nebraska Workers' Compensation trier of facts and

-------------------------------------------------------------------------

COMPLAINT

hampered with the presentation of Plaintiff's case to the three Panel Judge of Nebraska Workers' Compensation Court and Nebraska Court of Appeals.

## Silent Facts About the Recusal of Judge John R. Hoffert the Third Nebraska Workers' Compensation Judge to Preside in Onuachi's Low back Accident and Injuries' Case and the First Nebraska Workers' Compensation Court Judge to Preside in Onuachi's Phrenic Nerve Palsy Accident and Injury Case and the Assignment of Judge Tom E. Stine.

165.     For the facts that Plaintiff's employers during the time of his on-the-job low back accident and injuries Defendants Master Builder Inc. d/b/a Harry S. Peterson Company, Harry S. Peterson Company and its Parent Corporation Western Group and his employers at the time of his phrenic Nerve Palsy accident and injury Respondent The Alliance Group Inc. and Defendant Meylan Enterprises Inc. refused to pay Onuachi disability compensations benefits according to worker's compensation Act. And for the fact that the Respondent The Alliance Group Inc. that was paying for Onuachi's medical bills for his Phrenic Nerve Palsy injury and Defendant Master Builders Inc. d/b/a Harry S. Peterson Company that was paying for Onuachi's on-the-job low back injuries' medical bills on December 14, 2000 started to deny Plaintiff compensations for his medicals and medical treatments for the low back injuries and the Phrenic Nerve Palsy injury even at notifications were given to them.

166.     For the above reasons Onuachi applied for Supplemental Security income benefits from the Social Security Administration.

167.     Following the Disability Evaluations of Onuachi's on-the-job low back injuries and on-the-

COMPLAINT

47

job Phrenic Nerve Palsy injury by Dr. Paul Kolkman of Midtown Medical Group PLLC ordered by the Social Security Administration to determine Onuachi's eligibility for disability benefits. The evaluation was done on February 28, 2011. Also, Dr. Paul Kolkman during the evaluation found an increase in Plaintiff's on-the-job low back injuries, this is because Plaintiff was being denied medicals and medical treatments for these injuries for a period of about 11 years.

168. For the above reasons, Plaintiff filed Motion in the Nebraska Workers' Compensation Court based on Dr. Paul Kolkman's medical evaluations of Onuachi's on-the-job low back injuries and his on-the-job Phrenic Nerve Palsy injury. The Nebraska Workers' Compensation Court scheduled hearing for the Motion to be heard before Judge John R. Hoffert on September 27, 2012.

169. Before the hearing date, September 27, 2012, Onuachi discovered partial evidences that showed that the law firms, Defendants, Cassem, Tierney, Adams, Gotch & Douglas, Timmermier, Gross & Prentiss, and Pickens, Green & Cleason, L.L.P and the attorneys of records for the employers "Officers of the Court" Respondent Dennis R. Riekenberg, Defendant John R. Timermmier and Defendant John K. Green perpetuated "Fraud upon the Court" in obtaining the July 13, 2001 Nebraska Workers' Compensation Court Award.

170. Also, Onuachi discovered evidences that showed that Dr. Behrouz Rassekh the Neurosurgeon that performed Plaintiff's low back surgery because of the on-the-job low back injuries discovered Plaintiff's Phrenic Nerve Palsy injury during the process of Onuachi's on-the-job low back injuries' surgical procedures of which the law firms, Defendants, Cassem, Tierney, Adams, Gotch & Douglas, Timmermier, Gross & Prentiss, and Pickens, Green & Cleason, L.L.P and the employers'

----------------------------------------------------------------------

COMPLAINT

attorneys of record "Officers of the Court" Respondent Dennis R. Riekenberg, Defendant John R. Timermmier and Defendant John K. Green egregiously and fraudulently conducted deposition on August 9, 2000 by inducing the trier of facts, Judge Michael J. Fitzgerald and the Plaintiff Uju Onuachi in to believing that the August 9, 2000 deposition was the continuation of the deposition of Plaintiff's on-the-job low back injuries' deposition.

171.    Following the deposition of August 9, 2000, the law firms, Defendants, Cassem, Tierney, Adams, Gotch & Douglas, Timmermier, Gross & Prentiss, and Pickens, Green & Cleason, L.L.P along with the employers' attorneys of record "Officers of the Court" Respondent Dennis R. Riekenberg, Defendant John R. Timermmier and Defendant John K. Green egregiously "Concealed" Plaintiff's Phrenic Nerve Palsy Injury.

172.    The evidences offered by Plaintiff showed that the Nebraska Workers' Compensation Court does not have jurisdiction to hear Plaintiff's on-the-job low back accident and injuries case. The evidences also showed that the State of Ohio has jurisdiction over Plaintiff's on-the-job low back accident and injuries' case.

173.    The Nebraska Workers' Compensation Court received the Exhibits offered by Plaintiff into evidences before Judge John R. Hoffert with no objections by the Defendants. Judge John R. Hoffert promised that the Court will review the Exhibit and schedule a hearing date based on the evidences. Judge John R. Hoffert further, encouraged Plaintiff to get more detailed doctor's report on both his Phrenic Nerve Palsy injury and his low back injuries before the hearing.

---------------------------------------------------------------------

Page 48 of 82

COMPLAINT

49

174.    On September 9, 2013, Onuachi's Primary Care Provider sent him for CT scans of his low back and his Thoracic area and referred him to another Neurosurgeon. The Neurosurgeon advice that Onuachi need more surgeries at his low back to fix him, the advice was contrary to Dr. Behrouz Rassekh's Maximum Medical records' release on Plaintiff's on-the-job low back injuries.  Dr. Behrouz Rassekh's personally advised Plaintiff that more surgeries to his low back may led to his being paralyzed because the accident affected L2-L3, L4-L5 and L5-S1 which are very close to one another. He advised Plaintiff to control his low back pains with pain medications the reminder of his life.

175.    On December 14, 2012 Judge John R. Hoffert recused himself from presiding in Onuachi's on-the-job low back accident and injuries' Amended Petition of December 22, 1999 at docket 199 no. 2302, and from the fraudulent Petition of April 27, 2000 at docket 200 no. 0874. The Nebraska Workers' Compensation Court's presiding Judge assigned Judge Tom E. Stine to preside in this case.

176.    On October 8, 2013 Judge John R. Hoffert recused himself from presiding in Onuachi's on-the-job Phrenic Nerve Palsy accident and injury's Petition of March 14, 2005 at Docket 205 No. 0482. The Nebraska Workers' Compensation Court's presiding Judge assigned Judge Tom E. Stine to preside in Plaintiff's Phrenic Nerve Palsy accident and injury's Petition..

177.    Based on Defendants', Master Builders Inc., d/b/a Harry S. Peterson Company, Harry S. Peterson Company, Meylan Enterprises Inc., and the Respondent The Alliance Group Inc. "Frauds" and "Tortious Conducts" perpetuated in Onuachi's cases and "Frauds upon the Court" perpetuated by the Employers' attorneys of records Respondents Dennis R. Riekenberg, Defendants, John R. Timmermier and John K. Green "Officers of the Court"   alleged herein, on January 30, 2014 the Nebraska Workers'

-------------------------------------------------------------------------

Page 49 of 82

COMPLAINT

50

Compensation Court entered order by Judge Tom E. Stine disposing Onuachi's Amended Petition at Doc: 199 No. 2302 and the fraudulent Petition at Doc: 200 No. 0874 on Plaintiff's low back accident and injuries and Onuachi's Phrenic Nerve Palsy Injury's Petition at docket 205 no. 0482 which was not tried by the Court.

## Facts About the Nebraska Court of Appeals' Memorandum Opinion and Judgment on Appeal

178.    In 2014 Onuachi filed two notices of Appeals with the office of the Clerk of the Nebraska Workers' Compensation Court because Judge Tom E. Stine "Disposed-Of" the two Petitions Onuachi filed in the Nebraska Workers' Compensation Court on the same date, January 30, 2014, (1) Plaintiff's Amended Petition for his low back accident and injuries of December 22, 1999 at dockets 199 No. 2302 and the fraudulent Petition on Plaintiff's low back accident and injuries of April 27, 2000 at docket 200 No. 0874 and (2) Plaintiff's Petition of March 14, 2005 on his Phrenic Nerve Palsy accident and injury at Doc. 205 No. 0482.

179.    On February 26, 2014 Plaintiff filed Notice of Appeal on the Nebraska Workers' Compensation Court's order of January 30, 2014 entered by Judge Tom E. Stine with Nebraska Workers' Compensation Court's Clerk's office for the Petition found at the Nebraska Workers' Compensation Court's docket: 205 No. 0482 on Onuachi's Phrenic Nerve Palsy Injury.

180.    On March 3, 2014 Plaintiff filed Notice of Appeal on the order of January 30, 2014 entered

COMPLAINT

By Judge Tom E. Stine with the Nebraska Workers' Compensation Court's Clerk's office for the Amended Petition of December 22, 1999 at the Nebraska Workers' Compensation Court's dockets: 199 No. 2302 and on the fraudulent Petition of April 27, 2000 at docket  200 No. 0874 on Onuachi's Low Back Injuries.

181.      On March 6, 2014 the Nebraska Court of Appeals' Clerk office filed appeal on the Nebraska Workers' Compensation order of January 30, 2014 for the Petition at DOC: 205 No. 0482. The Nebraska Court of Appeals docketed this appeal at docket: A-14-000207 on Onuachi's Phrenic Nerve Palsy Injury's Petition.

182.      On March 17, 2014 the Nebraska Court of Appeals' Clerk's office filed appeal on the Second Nebraska Workers' Compensation order of January 30, 2014 for the Amended Petition of Onuachi's low back accident and injuries at DOC: 199 No. 2302 and the Petition at Docket 200 No. 0874. The Nebraska Court of Appeals docketed these appeals at docket number: A-14-000237.

183.      On May 19, 2014 Onuachi filed his brief for the appeal on Nebraska Court of Appeal's docket A-14-000207 for the Phrenic Nerve Palsy on-the-job injury and served a copy to the Respondent The Alliance Group Inc. and did not serve Meylan Enterprises Inc. as the Nebraska Workers' Compensation Court on July 27, 2005 dismissed Meylan Enterprises Inc. from the Petition of March 14, 2005.

184.      On April 29, 2014 the Nebraska Court of Appeals sent a letter to Onuachi notifying the Plaintiff that he should serve a copy of his brief at docket A-14-000207 to the Respondent Dennis R. Riekenberg the attorney of record for Defendant Meylan Enterprises Inc.

------------------------------------------------------------------------

Page 51 of 82

COMPLAINT

52

185.     On May 1, 2014 Onuachi responds to the Nebraska Court of Appeals letter and explained to the Court that Meylan Enterprises Inc. was not a respondent in the appeal found at docket A-14-000207.

186.     The Respondent The Alliance Group Inc. refused to file brief at docket A-14-000207 after the Nebraska Court of Appeals sent them a notice to file brief by the Nebraska Court of Appeals' Court Clerk, Mrs. Lanet S. Asmussen.

*187.*     Attorney Dennis R. Riekenberg, "Office of the Court" and his law firm, Defendant Cassem, Tierney, Adams, Gotch & Douglas, knew that the Nebraska Workers' Compensation Court dismissed Defendant Meylan Enterprises Inc. from Plaintiff's Phrenic Nerve Palsy accident and injury's petition on July 27, 2005, that Defendant Meylan Enterprises Inc. was not a respondent in the appeal at docket A-14-000207, and that Onuachi did not serve his brief at docket A-14-000207 to Defendant Meylan Enterprise Inc. or their attorney of record, Respondent Dennis R. Riekenberg.

188.     On June 23, 2014 Defendant Meylan Enterprises Inc. through their attorney of record, Respondent Dennis R. Riekenberg "Officer of the Court" and his Law firm, Defendant Cassem, Tierney, Adams, Gotch & Douglas, egregiously, intentionally and knowingly filed "Corrupt Brief" by filing one brief for dockets A-14-000207 in Onuachi's Phrenic Nerve Palsy Injury and A-14-000237 in Onuachi's Low Back Injuries to induce the Nebraska Court of Appeals into believing that the parties Defendants found at docket A-14-000207 were Defendants Meylan Enterprises Inc. and the Western Waterproofing Co., Inc., and that the subject matter of the case found at docket A-14-000207 is Plaintiff's

--------------------------------------------------------------------------

Page 52 of 82

COMPLAINT

53

on-the-job low back accident and injuries of about August 8, 1999 at Chesterfield Parking Garage Cleveland Ohio..

189.    Plaintiff noted that Defendant Western Waterproofing Co., Inc., a Subsidiary of Western Group was the same corporation the Respondent, Dennis R. Riekenberg, Defendants John R. Timmermier, and John K. Green and their law firms, Defendant Cassem, Tierney, Adams, Gotch & Douglas, Defendant Timmermier, Gross & Prentiss, and Defendant Pickens, Green & Cleason, L.L.P filed the fraudulent Petition of April 27, 2000 that induced the Nebraska Workers' Compensation Court Judges that have presided in Onuachi's low back injuries in to believing that Nebraska Workers' Compensation Court has jurisdiction over Onuachi's on-the-job low back accident and injuries.

190.    Again, in the Appeal of the trial Court's order of January 30, 2014, found at the Nebraska Court of Appeals docket A-14-000207 on Onuachi's Phrenic Nerve Palsy Injury, Respondent Dennis R. Riekenberg "Officer of the Court" egregiously, intentionally and knowingly deceived the Nebraska Court of Appeals' Judges, Honorable John F. Irwin, Honorable Everett O. Inbody and Honorable Michael W. Pirtle into believing that the Defendant Western Waterproofing Co., Inc., a Subsidiary of the Western Group, is a Party Defendant in Plaintiff's Petition of March 14, 2005, and Respondent Dennis R. Riekenberg egregiously, intentionally, knowingly and carefully concealed Respondent The Alliance Group Inc. the proper Party Defendant in interest, from Onuachi's Phrenic Nerve Palsy accident and injury lawsuit. This type of conduct is outrageous.

191.    Pursuant to Nebraska State Rules of Civil Procedure, Neb. Ct. R. App. P. §2-109(B)(6)

---------------------------------------------------------------------------

COMPLAINT

54

Defendant Meylan Enterprises Inc. did not serve Plaintiff copy of its corrupt brief thereby concealed the corrupt brief from Onuachi.

192.    The subject matter of the Nebraska Court of Appeals docket A-14-000207 is Onuach's "Phrenic Nerve Palsy on-the-job accident and injury of March 30, 1999 at Springfield Illinois Power Plant." The parties Defendants named in the petition were Defendant Meylan Enterprises Inc. and Respondent The Alliance Group Inc.

193.    Based on Defendant Meylan Enterprises Inc.'s corrupt brief of June 23, 2014 filed by Respondent Dennis R. Riekenbernd "Officer of the Court" and his law firm Defendant Cassem, Tierney, Adams, Gotch & Douglas,  the Nebraska Court of Appeals and its Judges where actually induced.

194.    The "Parties Defendants" named at the caption of Plaintiff's Phrenic Nerve Palsy accident and injury's Petition of March 14, 2005 filed in the Nebraska Workers' Compensation Court  are Defendants Meylan Enterprises Inc. and The Alliance Group Inc. which are Defendants named for the Appeal at the Nebraska Court of Appeals' docket A-14-000207  and were the Defendants named by the Nebraska Court of Appeals' Clerk's office at the caption of docket A-14-000207

195.    On November 26, 2014 the Nebraska Court of Appeals entered its Memorandum Opinion and Judgment on Appeal in docket A-14-000207 and named Defendants Meylan Enterprises Inc. and Western Waterproofing Company Inc. as Parties Defendants at the caption of the Memorandum Opinion and Judgment on Appeal just as the Respondent Dennis R. Riekenberg "Officer of the Court" did at the caption of Defendant Meylan Enterprises' corrupt brief..

196.    The "Subject Matter" of the Nebraska Court of Appeals Opinion and Judgment on Appeal

-----------------------------------------------------------------------

Page 54 of 82

COMPLAINT

55

at docket A-14-000207 was on Plaintiff's "Low Back Injuries" which is the subject matter found at Nebraska Court of Appeals docket A-14-000237 which is contrary to the "Subject Matter" in docket A-14-000207 the Plaintiff's Thoracic Area Injury (Phrenic Never Palsy Injury).

197.     At all relevant times, Onuachi was unaware of the above Material facts that were Suppressed, misrepresented and concealed by Defendant Meylan Enterprises Inc. through their attorney of record Respondent Dennis R. Riekenberg, "Officer of the Court," if Plaintiff had been aware, he would have taken steps to protect against Defendants' unlawful and wrongful conducts in these issues.

## Facts About Onuachi's Maximum Medical Improvement (MMI) of his Low Back Injuries

198.     Plaintiff's MRI scan of September 1, 1999 and March 30, 2000 lumbar spine performed at Creighton University Medical Hospital showed Disc Herniations at L2-L3, L4-L5, and L5-S1 of Plaintiff's low back as a result of the August 8, 1999 job accident.

199.     The Nebraska attorneys, Respondent Dennis R. Riekenberg, Defendant John R. Timmerier and Defendant John K. Green concealed the September 1, 1999 MRI and March 30, 2000 MRI from the Trier of Facts and from the Plaintiff Uju Onuachi.

200.     On July 18, 2000 Dr. Charles Taylon of Creighton University School of Medicine, the first Neurosurgeon who treated Plaintiff's low back injuries found that Plaintiff's low back conditions was caused by an injury occurring at work on August 8, 1999.

201.     On June 6, 2000 Plaintiff hard two surgeries on his low back because of the August 8, 1999 low back on-the-job injuries.

------------------------------------------------------------------------

Page 55 of 82

COMPLAINT

56

202.      The Plaintiff's low back surgeries were performed by Dr. Behrouz Rassekh a

Neurosurgeon at Neurosurgical Association of Council Bluffs, (1) Complete Heminlaminectomy of L4,

and (2) Partial Laminatomy of L5, and 3) removal of herniated disk at L4-L5.

203.      On August 29, 2001 Dr. Behrouz Rassekh released Plaintiff on Maximum Medical

Improvement (MMI) of his low back on-the-job injuries of about August 8, 1999. Dr. Behrouz Rassekh

released Plaintiff on the following Permanent Restrictions because of his low back on-the-job injuries of

August 8, 1999 at Chesterfield Parking Garage Cleveland Ohio: 1) Lifting limited to 25 pounds or less, 2)

Should avoid repeated bending, 3) Carrying objects, pushing, and pulling should be avoided 4) Sitting

and standing should be done on alternative basis, and 5) Long period of driving motor vehicle should be

avoided.

204.      On September 6, 2001 Plaintiff filed the Maximum Medical Improvement in the

Nebraska Workers' Compensation Court and copies were sent to Employers by the Nebraska Workers'

Compensation Court through their law firms of records, Defendants, Cassem, Tierney, Adams, Gotch &

Douglas, Timmermier, Gross & Prentiss, and Pickens, Green & Cleason, L.L.P

205.      On May 28, 2002 Plaintiff furnished his employers, Defendants Master Builder Inc. d/b/a

Harry S. Peterson Company, Harry S. Peterson Company, Meylan Enterprises Inc. and Respondent The

Alliance Group Inc. the Maximum Medical Improvement (MMI) Report of his low back injuries through

their attorneys of records, Respondent Dennis R. Riekenberg, Defendant John R. Timmermier and

Defendant John K. Green.

206.      Because of job related injuries of Onuachi's low back, Dr. Rassekh found that, Plaintiff

-----------------------------------------------------------------------

Page 56 of 82

COMPLAINT

57

subtend a Partial-Permanent Disability of 12% as a whole Body.

207.     Plaintiff was placed on the above Permanent Restrictions because of his lower back injuries. "In assessing a claimant's disability in a workers' compensation case, physical restrictions and impairment ratings are important, but once the claimant establishes the cause of disability, the trial judge is not limited to this evidence and may also rely on the claimant's testimony to determine the extent of the disability.

208.     Plaintiff's Disability assessment based on the Maximum Medical Improvement of August 29, 2001 have never been considered in his Disability Compensation because of the "Frauds upon the Courts" perpetuated by employers' attorneys of records Respondent Dennis R. Riekenberg, Defendant John R. Timmermier and Defendant John K. Green "Officers of the Court" in Onuachi's on-the-job low back injuries' lawsuit.

## Present Conditions of Onuachi's Low Back Injuries

209.     Plaintiff's resent CT Scan of lumbar spine performed on September 9, 2013, at Nebraska Methodist Hospital showed significant increase of Plaintiff's low back on-the-job injuries of August 8, 1999 because Plaintiff was denied Medicals and Medical treatment for a period of about 11 years.

210.     See a true and correct Plaintiff's physical appearance of his low back injuries as seen in the September 9, 2013 CT Scan above at Figure 1 on page 11 of this Complaint.

211.     Though, the low back surgeries helped a lot in reducing Plaintiff's low back conditions but

------------------------------------------------------------------------

COMPLAINT

58

the Plaintiff is still having chronic pains that goes down his legs, taglines and numbness of his legs some times.

212.    Plaintiff is still taking pain medication in controlling his low back pains as advised by Dr. Rassekh.

213.    Onuachi still walks He-party-Hop because of low back pains, cannot walk long distance without stopping every three third or less of a block, he also cannot seat or stand for long time every 10 mints to 15 mints at a time. Plaintiff dose not drive, driving increases his low back pains significantly. All these conditions are because of his on-the-job low back injuries.

**Present Conditions of Onuachi's Phrenic Nerve Palsy Injury and the Shoulder's Pains develop After the Pacemaker Implant.**

214.    Plaintiff still experiences the scratchy Chest pains sometimes sharp and depressing  Blount or sharp shoulders' pains, Shortness of Breath, Tingling in his upper extremities, difficulties lifting his right hand above his head, and also Plaintiff cannot walk long distance without stopping to catch his breath.

# CAUSES OF ACTIONS

## FIRST CAUSE OF ACTION

-------------------------------------------------------------------------
Page 58 of 82

COMPLAINT

59

("Fraud in the Concealment" Against Defendants, Master Builders Inc. d/b/a Harry S. Peterson Company known as SKW MBT Services Inc., Harry S. Peterson Company, and The Western Group)

215.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 26, 55 through 84, 87 through 89, and 93 through 213, as if fully set forth herein.

216.     The Contract of Hiring Agreement between Uju Onuachi and Defendants, Master Builders Inc. d/b/a Harry S. Peterson Company known as SKW MBT Services Inc. and Harry S. Peterson Company concealed by these Defendants is a legal instrument that creates mandatory obligations as Employers and Employee between the Defendants and Plaintiff.

217.     Defendants SKW MBT Services Inc. and Harry S. Peterson Company knew and intentionally suppressed and concealed the contract of hiring agreement between them and Plaintiff that was in force at the time of Onuachi's on-the-job low back accident and injuries of about August 8, 1999.

218.     Defendants had a duty to disclose this material fact as a result of determining; (1) the jurisdiction of Plaintiff's low back injuries, (2) Onuachi's employer at the time of accident, and (3) the calculations of Onuachi's compensations according to the exclusive remedies provided by the workers' compensation Act. In addition, Defendants had an independent duty to disclose this material fact since all contracts of employment are presumed to have been made with reference to the worker's compensation Act about this matter, and were thus bound to make full and fair disclosure of all material facts.

219.     After the successful "Frauds upon the Courts" described herein by "Officers of the Court,"

-----------------------------------------------------------------------

Page 59 of 82

<u>COMPLAINT</u>

60

by the Respondent, Dennis R. Riekenberg, Defendants John R. Timmermier, and John K. Green that led to the recusal of Judge Michael J. Fitzgerald, and the withdrawal of Exhibits offered for the trail of Plaintiff's low back Injuries and the stipulated motion by these officers of the court that led to the withdrawal of Phillip G. Wright, Plaintiff's attorney of record. The Defendants fraudulently fabricated the "Subcontract (Limited Form)" and "Supplementary Conditions to Subcontract" from which the Defendants concealed the fact that Plaintiff entered into a written contractual agreement with Defendant(s) SKW MBT Services Inc. and/or Harry S. Peterson Company in Cleveland Ohio as well as that Plaintiff was hired directly by Defendant(s) SKW MBT Services Inc. and/or Harry S. Peterson Company to perform the hydro-demolishing job at Chesterfield Parking Garage Cleveland Ohio.

220.     By suppressing and concealing these material facts of employment, Defendants concealed the 1999 contract of hiring agreement in force at the time of Plaintiff's low back injuries. Concealing the contract of hiring agreement that was in force at the time of Plaintiff's on-the-job low back accident and injuries this way had a materially negative effect on Plaintiff's Workers' Compensation claim that was known by Defendants.

Pursuant to Nebraska State law, Neb. Rev. Stat. §48-101: Nebraska workmen's compensation law is not applicable where contract of employment was made in another state, and where employee was injured in said state in the performance of duties which were not incidental to an industry conducted in the state by the employer. Rigg v. Atlantic, Pacific & Gulf Oil Co., 129 Neb. 412, 261 N.W. 900 (1935).

221.     Defendants knew or should have known that had the truth been disclosed, the Nebraska

---------------------------------------------------------------------

Page 60 of 82

COMPLAINT

61

Workers' Compensation Court would have found that the Nebraska Workers' Compensation Court had no jurisdiction over Onuachi's low back accident and injuries. The Nebraska Workers' Compensation Court would have found that the contract of hiring agreement at the time of accident of Plaintiff's low back injuries was entered in the State of Ohio and not in the State of Nebraska. Also, the Nebraska Workers' Compensation Court would have found that Plaintiff's employers, Defendant SKW MBT Services Inc. and Harry S. Peterson Company are not from the State of Nebraska, the would have further, found that Plaintiff's low back accident occurred in the State of Ohio and not Nebraska. The Nebraska Workers' Compensation Court would have found that the Nebraska Workers' Compensation Court has no jurisdiction over Plaintiff's low back accident and injuries of August 8, 1999 which occurred at Chesterfield Packing Garage Cleveland Ohio. Rigg v. Atlantic, Pacific & Gulf Oil Co., 129 Neb. 412, 261 N.W. 900 (1935).

222.    Defendants intended to induce reliance and to defraud Plaintiff based on these misrepresentations of the terms of Plaintiff's employment and concealment of contract of hiring agreement in force at the time of accident and injuries.

223.    At all relevant times, Plaintiff was unaware of the suppression and misrepresentation of these material facts of the terms of employment and the concealment of material fact, "the 1999 contract of hiring agreement in force at the time of Plaintiff's low back on-the-job injuries of about August 8, 1999" by Defendants. If Plaintiff had been aware, he would have taken steps to protect the exclusive legal rights of the remedies provided by the worker's compensation Act and to protect against Defendants' wrongful conduct.

----------------------------------------------------------------------

COMPLAINT

62

224.     As a proximate result of Defendants intentional suppressions and fraudulent concealment of the above-described material facts, Plaintiff has suffered, and continues to suffer damages, in an amount currently unascertained, but according to proof at trial.

225.     The aforementioned conduct of Defendants constitutes frauds, suppressions and concealment of material facts known to them, with the intent on the part of Defendants of inducing reliance and thereby depriving Plaintiff of his legal rights or otherwise causing injury, and as despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's statutory legal rights, so as to justify an award of interest according to the law and sufficient fees.

## SECOND CASEOF ACTION

("Deformation of Character" against Defendants Master Builders Inc. d/b/a Harry S. Peterson Company known as SKW MBT Services Inc., Harry S. Peterson Company, The Western Group, Meylan Enterprise Inc., Defendants, Cassem, Tierney, Adams, Gotch & Douglas, Timmermier, Gross & Prentiss, and Pickens, Green & Cleason, L.L.P)

226.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 26, 55 through 84, 87 through 89, and 93 through 213, as if fully set forth herein.

227.     The aforementioned acts of Defendants' fraudulent conducts, the fraud upon the Court and fraud in the Concealment of material facts in Plaintiff's low back accident and injuries lawsuit, caused Onuachi to be jailed in 2005 in the County Jail of Lancaster County, Nebraska for about 72 hours.

-------------------------------------------------------------------------

Page 62 of 82

COMPLAINT

63

228.     Onuachi's name was published as a wanted fugitive in intonate/newspaper by Lancaster County Police Nebraska, Plaintiff's family members, friends and numerous people who knows Onuachi were calling and asking what was going on, why his name was published as a fugitive over the intonate/newspaper by the Lancaster Police.

229.     As a proximate result of Defendants' fraud upon the Court and fraud in the Concealment, Onuachi has been harmed and damaged therefore, justifies award of Deformation of Character in the amount as allowed by the law, to be proved at trial.


## THIRD CAUSE OF ACTION

("Fraud in the Concealment" against Defendant Meylan Enterprise Ins.)

230.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 14, 29 through 54, 63 through 68, 77 through 86, 90 through 92, 96 through 105, and 165 through 177, as if fully set forth herein.

231.     Respondent The Alliance Group Inc. and Defendant Meylan Enterprises Inc. fraudulently Concealed the fact that Plaintiff sustained a "Phrenic Nerve Palsy Injury" from the on-the-job accident of March 30, 1999 at Springfield Illinois Power Plant in the scope and course of Plaintiff's employment with them as well as the terms of Plaintiff's accident and injury, including (1) number of day worked per week (2) Plaintiff's wages per week (4) date Plaintiff notified his employer (5) if injury/illness occurred in employers premises, (6) postal code where injury/illness occurred, (6) type of injury or illness, (7) part of body affected, (8) how injury/illness or abnormal health condition occurred, (9) cause of injury, and (10)

-------------------------------------------------------------------------

Page 63 of 82

COMPLAINT

64

initial treatment. By concealing Plaintiff's "phrenic Nerve Palsy injury", Defendants deceived the Nebraska Workers' Compensation Court into denying Plaintiff compensations as legally provided by the exclusive remedies of the workers' compensation Act for Plaintiff's Phrenic Nerve Palsy injury. This type of conduct is outrageous.

232.     At all relevant times, Plaintiff was unaware of the material facts that were suppressed and concealed by Defendants. If Plaintiff had been aware, he would have taken steps to protect the exclusive remedies provided by the Workers' Compensation Act for his on-the-job Phrenic Nerve Palsy injury and to protect against Defendants' wrongful conduct.

233.     Further, on August 9, 1999 Defendant, Meylan Enterprises Inc. and the Alliance Group Inc. intentionally advised Plaintiff to misrepresent the accident and injuries of his low back and relate his low back injuries to his work performance on the preceding Friday, August 6, 1999.

234.      However, this was not true and was a misrepresentation of material fact. Plaintiff's low back on-the-job injuries occurred on August 8, 1999 while Plaintiff was lifting a tool box of about 100lbs at Chesterfield Parking Garage Cleveland Ohio (Job Sit).

235.     Defendants intentionally deceived Plaintiff that the union should not know that we did Some job on August 8, 1999 induced Plaintiff to state that his low back accident and injuries occurred on August 6, 1999.

236.     Furthermore, On August 9, 1999 Defendant Meylan Enterprises Inc. filed a fraudulent "Injury Report" in notifying the Defendant The Alliance Group Inc. of Plaintiff's low back accident and injuries of about August 8, 1999 in which the Defendant Meylan Enterprises Inc. intentionally

-------------------------------------------------------------------------
Page 64 of 82

COMPLAINT

misrepresented material fact by stating; "Employee reinjured himself from a 4/2/99 hip injury, while lifting a tool box on 8/8/99 (Sunday)…"

237.     However this was not true and was a misrepresentation of material fact. Defendant Meylan knew that Plaintiff's Phrenic Nerve Palsy on-the-job accident occurred on March 30, 1999 and that Plaintiff was taken to hospital on April 2, 1999 by Defendants' Meylan Enterprises Inc. and the Alliance Group Inc. director of injury, Mr. Paul A. Correa.

238.     Further, Defendant Meylan Enterprises Inc. knew that Plaintiff had no hip injury however; this was a device by Defendants to intentionally conceal Plaintiff's "Phrenic nerve Palsy" on-the-job injury of March 30, 1999 to avoid compensation to Plaintiff pursuant to the exclusive remedies provided by the Workers' Compensation Act. This type of conduct is outrageous.

239.     The material misrepresentations were made with the purpose of initiating to conceal Plaintiff's latent and progressive Phrenic Nerve Palsy injury process as illustrated above, in order to profit from not compensating Plaintiff for the Phrenic Nerve Palsy injury pursuant to the exclusive remedies provided by the Workers' Compensation Act.

240.     Defendant Melan Enterprises Inc. and Respondent The Alliance Group Inc. were aware of the misrepresentations and profited from them.

241.     Defendants The Alliance Group Inc. and Defendant Meylan Enterprises Inc. had a duty to Disclose these material facts as a result of their fiduciary relationship employee and employer. In addition, Respondent The Alliance Group Inc. and Meylan Enterprises Inc. had an independent duty to

66

disclose these material facts since they undertook to make other affirmative representations about this matter, and were thus bound to make full and fair disclosure of all material facts.

242.    As a proximate result of Responndent The Alliance Group Inc. and Defendant Meylan Enterprises Inc. intentional and fraudulent suppression and concealment of the above-described material facts, Plaintiff has suffered, and continues to suffer damages, in an amount currently unascertained, but according to proof at trial.

243.    Defendants are guilty of malice, fraud, and/or oppression. Defendants' actions were Malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such Plaintiff is entitled to recover, in addition to actual damages, medical treatment incurred, fee and interest owes to Plaintiff with regard to the accident and injuries of his Phrenic Nerve Palsy accident and injury to deter them from engaging in future misconduct.


## FOURTH CAUSE OF ACTION

### (Fraud in the Inducement Against Defendant Meylan Enterprises Inc.)

244.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 14, 29 through 54, 63 through 68, 77 through 86, 90 through 92, 96 through 105, and 165 through 177,as if fully set forth herein.

245.    Defendants intentionally misled the Plaintiff to misrepresent the date in which his on-the

-----------------------------------------------------------------------

COMPLAINT

job low back accident and injury occurred to August 6, 1999. However, this was not true and was a misrepresentation of material fact. The date in which Plaintiff's on-the-job low back accident and injuries occurred was August 8, 1999. Defendants were attempting to conceal the accident and injury of Plaintiff's Phrenic Nerve palsy to which occurred in the scope and course of Plaintiff's employment with Respondent The Alliance Group Inc. and Defendant Meylan Enterprises Inc. in Springfield Illinois Power Plant in which Defendants are legally responsible for, pursuant to the exclusive remedies provided by the Workers' Compensation Act. This type of conduct is outrageous. Defendants are fraudulently foreclosing on the on-the-job low back accident and injuries of Plaintiff which they are not Plaintiff's employers at the time of Plaintiff's low back accident and injuries and the Nebraska Workers' compensation Court lack jurisdiction over Plaintiff's low back accident and injuries. This type of conduct is outrageous.

246.    Respondent The Alliance Group Inc. and Defendant Meylan Enterprises Inc. deceived Plaintiff that the union should not know that we did some job on August 8, 1999 induced Plaintiff to state that his low back accident and injuries occurred on August 6, 1999.

247.    The material misrepresentations were made by Respondent The Alliance Group Inc. and Defendant Meylan Enterprises Inc. with the intent to cause Plaintiff to reasonably rely on the misrepresentation in order to induce the Plaintiff to rely on the misrepresentation. This material misrepresentation was made with the purpose of initiating to conceal Plaintiff Phrenic Nerve Palsy on-the-job injury process as illustrated above, in order to profit from Plaintiff's Phrenic Nerve Palsy on-the-job injury by denying Plaintiff the exclusive remedies provided by the Act.

248.    Defendants were aware of the misrepresentation and profited from them.

-----------------------------------------------------------------------

COMPLAINT

68

249.    As a direct and proximate result of the misrepresentations to conceal Plaintiff's Phrenic Nerve Palsy injury Plaintiff's was unlawfully damaged and injured in an amount to be proven at trial.


### FIFTH CAUSE OF ACTION

**(Race/Disability Discrimination Against Defendants,  Meylan Enterprises Inc.)**

250.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 14, and 34 through 54 as if fully set forth herein.

251.    Dfendant Meylan Enterprises Inc. and the Alliance Group Inc. did not provide job for Onuachi. On September 20, 1999 the Defendant, Meylan Enterprises Inc. and Alliance Group Inc. fired Plaintiff stating; "There is no work that would qualify as light duty at Meylan Enterprises. No employee may work at Meylan until he/she has been released by a physician and has a written statement authorizing them to work with No restrictions."

252.    Randy Cudlipp, Onuachi's co-worker, a white nonblack had a low back on-the-job injuries and Meylan Enterprises Inc./The Alliance Group Inc. retained Cudlipp's job. While Uju Onuachi, a black nonwhite had a low back on-the-job injuries and Meylan Enterprises Inc./The Alliance Group Inc. fired Onuachi from his job because of  his race (black) and his disability (low back injury).


### SIXTH CAUSE OF ACTION

-------------------------------------------------------------------------
Page 68 of 82

COMPLAINT

253.     ("Independent Action" against Defendants Cassem, Tierney, Adams, Gotch & Douglas, and Timmermier, Gross & Prentiss, and Pickens, Green & Cleason, L.L.P. now known as Overland Wolf,)

254.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 214 herein as is fully set forth.

255.     Tampering with the administration of justice in the manner indisputably shown in Onuachi's cases involve far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud. Judicial Judgment involves an issue of great moment to the public.

256.     This is not simply a case of a judgment obtained with the aid of a witness who, on the Basis of after-discovered evidence, is believed possibly to have been guilty of perjury. Herein we find a deliberately planned and carefully executed schemes to defraud not only the Nebraska Courts but also the United States District Court for the District of Nebraska and the second highest Court in the United States of America, the United States Court of Appeals for the Eighth Circuit to achieve their purposes, the officers of the court Respondent Dennis R. Riekenberg, Defendants John R. Timmermier, and John K. Green, and their law firms created false evidences, deceived the courts, introduced altered exhibits, withheld important evidences, and filed corrupt brief on appeal. Onuachi's frustrated discovery of these

-----------------------------------------------------------------------

COMPLAINT

70

frauds in the judicial processes showed that the frauds are abuse of the "Rules of Civil Procedure".

257.         The frauds on the courts in Plaintiff's cases as this Court have seen within, were those species of frauds that defiles the Courts Itself and these were frauds perpetrated by officers of the court, Respondent Dennis R. Riekenberg, Defendants John R. Timmermier, John K. Green, and their law firms so that the judicial machinery did not perform in the usual manner in its impartial task of adjudicating cases in Onuachi's cases.

258.         Under Federal law, when any officer of the court has committed "fraud on the court," The orders and judgment of that court are void, of no legal force or effect.

259.         There is no statute of limitations for bringing a fraud upon the court claim. _Hazeltlas_, 322 U.S. at 244. A decision produced by fraud on the court is not in essence a decision at all and never becomes final.   _Kenner v. Comm of Internal Revenue_, 387 F.2d 689, 691 (7th Cir. 1968).

260.         Professor Moore writes that Fraud on the court is limited to fraud that does, or at Least attempts to, defile the court itself,   or that is perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudicating cases.   _Moore Federal Practice_ 3d Â¶ 60.21[4][a] (3d ed. 2003). Thus, a fraud on the court is a fraud designed not simply to cheat an opposing litigant, but to corrupt the judicial process or subvert the integrity of the court. _Oxxford Clothes XX, Inc. v. Expeditors Int, Inc.,_ 127 F.3d 574, 578 (7th Cir. 1997); _Pumphrey v. K.W. Thompson Tool Co.,_ 62 F.3d 1128, 1131 (9th Cir. 1995) (citation omitted); _Transaero, Inc. v. La Fuerza Area Boliviana,_ 24 F.3d 457, 460 (2d Cir. 1994). It is marked by an unconscionable plan or scheme which is designed to improperly influence the court in its decisions,   _Dixon v. Commissioner,_ No. 00-70858, 2003

COMPLAINT

U.S. App. LEXIS 4831, at *11-12 (9th Cir. Mar. 18, 2003), *amending* 316 F.3d 1041 (9th Cir. 2003), or by egregious misconduct directed to the court itself. *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1998) (citation omitted).

261.     In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud  upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

262.     "Fraud upon the court" has been defined to "embrace that species of fraud which does, Or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kenner v. C.I.R.*, 387 F.3d 689 (1968); *7 Moore's Federal Practice*, 2d ed., p. 512, Â¶ 60.23. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final."

263.     It is also clear and well-settled law that any attempt to commit "fraud upon the court" vitiates the entire proceeding.

264.     The *People of the State of Illinois v. Fred E. Sterling*, 357 Ill. 354; 192 N.E. 229 (1934) ("The maxim that fraud vitiates every transaction into which it enters applies to judgments as well as to contracts and other transactions."); *Allen F. Moore v. Stanley F. Sievers*, 336 Ill. 316; 168 N.E. 259 (1929) ("The maxim that fraud vitiates every transaction into which it enters ..."); *In re Village of Willowbrook*,

-------------------------------------------------------------------------
Page 71 of 82

COMPLAINT

37 Ill.App.2d 393 (1962) ("It is axiomatic that fraud vitiates everything."); *Dunham v. Dunham*, 57 Ill.App. 475 (1894), affirmed 162 Ill. 589 (1896); *Skelly Oil Co. v. Universal Oil Products Co.*, 338 Ill.App. 79, 86 N.E.2d 875, 883-4 (1949); *Thomas Stasel v. The American Home Security Corporation*, 362 Ill. 350; 199 N.E. 798 (1935).

265.    Common examples of fraud upon the court include the fabrication of evidence by Counsel as seen herein    *Greiner*, 152 F.3d at 789, and the insertion of bogus documents into the record as seen herein.    *Oxxford Clothes*, 127 F.3d at 578. But, because corrupt intent knows no stylistic boundaries, fraud on the court can take many forms,    *Aoude v. Mobile Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989), and courts take each case on its facts. *See Dictograph Products Co. v. Sonotone Corp.*, 230 F.2d 131, 137 (2d Cir. 1956).

266.    The within conducts by these Nebraska attorneys Respondent Dennis R. Riekenberg, Defendants John R. Timmimier, and John K. Green, and their law firms satisfied the standard to justify upsetting the finality of Plaintiff's Low Back Injuries' and Phrenic Nerve Palsy injury's judgments by the Nebraska Courts. The Third Circuit described the standard as follows: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court. They conclude that a determination of fraud on the court may be justified only by the most egregious misconduct directed to the court itself and that it must be supported by clear, unequivocal and convincing evidence as onuachi have in these cases. The court further ruled that the fraud on the court must constitute egregious misconduct as shown by the allegations list by Onuachi within.

267.    Chief Justice John Marshall acknowledged that a court may grant relief from

COMPLAINT

73

judgment

where a new matter clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself before judgment. *Marine Ins. Co. of Alexandria v. Hodgson*, 11 U.S. (7 Cranch) 332, 336 (1813). He further emphasized that an Article III court can grant relief where the equity of the applicant [is] free from doubt, and where a judgment *would be against conscience for the person who has obtained it to avail himself*.

268.          In Onuachi's cases, the frauds were directed to the judicial machinery itself. The Frauds subverted the integrity of the courts. The frauds were designed to deceive the courts into believing facts that were not true. The courts were unable to adjudicate the matters properly because the courts were influenced by false information as seen within.

269.    The aforementioned conducts of Defendants, Dennis R. Riekenberg, John R. Timmermier, And John K. Green "Officers of the Court" and their law firms, are willful, wanton, malicious, and oppressive, were undertaken with the intent to defraud and deceive the Courts, and justify the setting outside of the Judgments and orders of the Nebraska State Courts, United States District Court for the District of Nebraska and United Sates Court of Appeals for the Eighth Circuit Appeals Court in Plaintiff's cases.


Defendants Cassem, Tierney, Adams, Gotch & Douglas, and Timmermier, Gross & Prentiss, and Pickens, Green & Cleason, L.L.P. now known as Overland Wolf, Should be Sanctioned.

270.    This Court should sanctioned Nebraska Attorneys, Defendants, Dennis R. Riekenberg,

--------------------------------------------------------------------------

Page 73 of 82

COMPLAINT

74

John R. Timmermier, John K. Green, Stephen Ahl, M/s Krista M. Carlson, Abigail M. Moland, David L. Welch, Dean F. Suing, Jacqueline M. DeLuca, Mark C. Laughlin, and Nicole K. Griffard "Officers of the Court" and their law firms, for their not complying with the law, by their "frauds upon the Courts", by their placing the Judges who have presided over Plaintiff, Uju Onuachi's cases in a position where the Judges engage in unlawful acts, and by their disdain for the law and the Judges of Nebraska State Courts and the Federal Court Judges who presided or render their opinions in Onuachi's cases.

271.        Defendants, John K. Green, Stephen Ahl, Krista M. Carlson, Abigail M. Moland, David L. Welch, Dean F. Suing, Jacqueline M. DeLuca, Mark C. Laughlin, and Nicole K. Griffard "Officers of the Court" and their law firms and pursuant to the United States District Court for the District of Nebraska's General Rules; 7.1(b) Ethical Standards: these Officers of the Court, as members of the United States District Court for the District of Nebraska Bar had a duty to this Court to: 1) comply with this court's rules, and 2) refrain from conduct unbecoming of a member of the United States District Court for the District of Nebraska Bar.

272.    Rules; 7.1(e): Oath of Admission: these "Officers of the Court" took oath to demean themselves faithfully, uprightly, and according to law; and will support, uphold, and defend the Constitution of the United States of America.

273.        To determine whether and to what extent discipline should be imposed in a disciplinary proceeding against these Nebraska attorneys, it is necessary that this Court consider the nature of the offense, the need for deterring others, the maintenance of the reputation of the bar as a whole, the

75

protection of the public, the attitudes of the offenders generally, and their present or future fitness to continue in the practice of law.

274.          These Nebraska attorneys have failed to faithfully discharge their duties as attorneys and counselor when they conceals material facts from this Court and presents a report known by them to be less than a true, accurate, and full account.

275.          Cumulative acts of deception upon a pro-se litigant are distinguishable from isolated incidents of neglect and therefor justify more serious sanctions.

## SEVENTH CAUSE OF ACTION

**("Intentional Inflection of Emotional Distress" against all Defendants)**

276.          Plaintiff re-alleges and incorporated by reference all preceding paragraphs as though fully set forth herein.

277.          Because of the frauds upon the Courts, frauds and deceits actions of Defendants, as set forth herein, Plaintiff has suffered irreparable Injuries  1) Implantation of unwanted permanent pacemaker, 2) Deformation of character, 3) the opportunity of being a father to his kids at their young ages, 4) opportunity to attend his father's funeral, 5)  opportunity of not taking care of his father at old age, 6) opportunity of being employed and maintaining a job, 7) alienations from family members and friends, and 8) Plaintiff being afraid going to Hospitals and emergency rooms to be treated by specialist doctors and emergency room doctors.

---------------------------------------------------------------------------

COMPLAINT

76

278.     This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.

279.     Defendants intentionally, knowingly and recklessly misrepresented to the Plaintiff those defendants were entitled to exercise the power of professional conducts; in the medical care at the part of Defendants Alegent Health Immanuel Medical Center, Dr. Bodo W. Treu, Dr. David A. Sterns and Dr. Rebecca S. Rundlett and judiciary fairness at the part of Defendants Dennis R. Riekenberg, John R. Timmermier, John K. Green, Stephen Ahl, Krista M. Carlson, Abigail M. Moland, David L. Welch, Dean F. Suing, Jacqueline M. DeLuca, Mark C. Laughlin, and Nicole K. Griffard "Officers of the Court" and their law firms and as employers at the part of Defendants, Master Builders Inc. d/b/a Harry S. Peterson Company known as SKW MBT Services Inc., Harry S. Peterson Company, Western Group, The Alliance Group Inc. and Meylan Enterprise Inc. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual rights.

280.     Defendants' fraudulently conducts, concealing the contract of hiring agreement at the time of Plaintiff's low back accident and injuries, fraudulently conferring jurisdiction of Plaintiff's low back accident and injuries to Nebraska Workers' Compensation Court, concealing and disposing of Plaintiff's Phrenic Nerve Palsy Injury and fraudulently implanting pacemaker in Plaintiff is so outrageous and extreme that it exceeds professional bad faith conduct which is not tolerated in a civilized community.

281.     Such conduct were undertaken with the specific intent of inflicting emotional distress on

-------------------------------------------------------------------------

Page 76 of 82

COMPLAINT

Plaintiff, such that Plaintiff would be so emotionally distressed and debilitated that he would be unable to exercise legal rights in his low back injuries and Phrenic Nerve Palsy injury, the right to cure the alleged defaults, right to verify the alleged low back injuries and Phrenic Nerve Palsy injury that Defendants are attempting to conceal and disposed of, and right to make a legal claim on the injuries such that the actual cause of the said injuries will never been known.

282.    At the time Defendants began their fraudulent concealments proceedings, Defendants were not acting in good faith while attempting to conceal and dispose of the subject injuries. Defendants and each of them committed the act set forth above with complete, utter and reckless disregard of the probability of causing Onuachi to suffer severe emotional distress.

283.    As an actual and proximate cause of Defendants' attempt to fraudulently conceal and to dispose of Plaintiff's low back and Phrenic Nerve Palsy injuries or claim of the legal right of these injuries, the Plaintiff has suffered severe emotional distress, including but not limited to loss of his immediate family, his family and friends, loss of his home properties on numerous evictions, not being there for his father's funeral, scared going to hospitals and hospital emergence rooms, lack of sleep, anxiety, and depression.

284.    Plaintiff did not default in the manner stated in the orders of the Nebraska Workers' Compensation Court of January 30, 2014, yet because Defendants' outrageous conducts, Plaintiff has been living under the constant emotional nightmare of losing his live because of the pacemaker implanted, stalking him in a bad faith, and more injuries inflated in him from the Defendants' fraudulent conducts.

-------------------------------------------------------------------------

Page 77 of 82

COMPLAINT

285.        As a proximate cause of defendants' conducts, Plaintiff has experienced many sleepless nights, severe depression, lack of appetite, and loss of taking care of his immediate family. Plaintiff kids has acquired lots of loans from family members and friends in going to school and to meting their other needs.

286.        The conducts of Defendants, and each of them as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people. The conducts of Defendants, has misled Plaintiff into doing things that Plaintiff would have not thought of doing in his life but due to there is no alternative Plaintiff have become victim this period of about 20 years he was sustained under Defendants' "Frauds upon the Courts" and  "tortures conducts"  in some of the things he did wrongly. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conducts.

### The Plaintiff is a Pro Per

Pro se litigants' court submissions are to be construed liberally and held to less stringent standards than submissions of lawyers. If the court can reasonably read the submissions, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with rule requirements. Boag v. MacDougall, 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)(quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); Haines v. Kerner,

COMPLAINT

404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); <u>McDowell v. Delaware State Police,</u> 88 F.3d 188, 189 (3rd Cir. 1996); <u>United States v. Day</u>, 969 F.2d 39, 42 (3rd Cir. 1992)

    <u>The Federal Rules</u> rejects the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. According to Rule 8(f) FRCP and the State Court rule which holds that all pleadings shall be construed to do substantial justice. *"...a pro se petition cannot be held to same standard as pleadings drafted by attorneys"* SEE: *<u>Boag v. MacDougall,</u>* 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); *<u>Estelle v. Gamble,</u>* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) quoting *<u>Conley v. Gibson,</u>* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *<u>Haines v. Conley v. Gibson,</u>* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## <u>CONCLUSION</u>

## <u>PRAYERS FOR RELIEF</u>

    WEREFORE, Plaintiff prays for judgment against all Defendants as follows:

### <u>FIRST CAUSE OF ACTION- FRAUD IN THE CONCEALMENT</u>

1. For Compensatory Damages, in an amount to be determined by proof at trial;

2. For any and all Special, incidental and/or Consequential Damages, in an amount to be determined by proof at trial;

-------------------------------------------------------------------------

Page 79 of 82

<u>COMPLAINT</u>

3.  For exemplary and/or Punitive Damages as allowed by law;

### SECOND CAUSE OF ACTION – DEFORMATION OF CHARACTER

1.  For Compensatory Damages in an amount as allowed by law to be determined by proof at trial;

2.  For Special Damages in an amount to be determined by proof at trial;

3.  For General Damages in an amount to be determined by proof at trial;

4.  For Punitive Damages as allowed by law;

### THIRD COUSE OF ACTION – FRAUDE IN THE CONCEALMENT

1.  For Compensatory Damages in an amount to be determined by proof at trial;

2.  For Special Damages in an amount to be determined by proof at trial;

3.  For General Damages in an amount to be determined by proof at trial;

4.  For Punitive Damages as allowed by law;

5.  For Restitution as allowed by law.

### FOURTH CAUSE OF ACTION --FRAUD IN THE INDUCEMENT

1.  For Compensatory Damages in an amount to be determined by proof at trial;

2.  For Special Damages in an amount to be determined by proof at trial;

3.  For General Damages in an amount to be determined by proof at trial;

4.  For Punitive Damages as allowed by law;

5.  For Restitution as allowed by law.

### FIFTH CAUSE OF ACTION – RACE/DISABILITY DISCRIMINATION

---------------------------------------------------------------------

Page 80 of 82

COMPLAINT

81

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For salary increase in an amount to be determined by proof at trial

3. For Punitive Damages as allowed by law;

### SIXTH CAUSE OF ACTION - INDEPENDENT ACTION

1. To set aside the Nebraska Workers' Compensation Judgment of July 13, 2001;

2. To set aside any Nebraska Workers' Compensation Judgment and orders following the July 13, 2001 Judgment;

3. To set aside the Nebraska Court of Appeals' Memorandum Opinion and Judgment on Appeal of November 26, 2014 and all orders entered by the Nebraska Court of Appeals and the Supreme Court of the State of Nebraska;

### SEVENTH CAUSE OF ACTION--- INTENTIONAL INFLECTION OF EMOTIONAL DISTRESS

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. Foe Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conducts;

5. For Restitution as allowed by law.

### ON ALL CAUSES OF ACTIONS

    a. For Cost of Suit incurred;

    b. For such other and further relief as the Court may deem proper.

-------------------------------------------------------------------------

Page 81 of 82

COMPLAINT

82

**Dated this 13TH   day of May, 2019.**

**Submitted**

**UJU ONUACHI, Plaintiff,**

By ---------------------------------

Uju Onuachi (In Proper Person)
P.O. Box 94646,
Lincoln, NE. 68509
Phone (614) 372-3460
onuachi@outlook.com

--------------------------------------------------------------------------

COMPLAINT